Gayle and Wife *vs.* Fattle.

(Decided July 1st, 1859.)

---

# BENJAMIN R. GAYLE and CHARLOTTE GAYLE, his Wife, *vs.* JOHN FATTLE.

The mere claim by a *third person* of a paramount title, not alleged by the bill to be *valid,* and bringing suit upon that claim against the *purchaser,* are not sufficient to authorise a court of equity to stay, by injunction, the vendor who has *warranted the title,* from proceeding either at law or in equity to collect the unpaid purchase money.

No injunction to stay a sale under the Act of 1826, ch. 192, can be granted, unless the bill be filed by the party, and contain the *allegations,* required by the eighth section of that Act.

If a sale is made without a compliance with the requisitions of the Act of 1826, ch. 192, the proper time to take advantage thereof is *when the sale is reported.*

APPEAL from the Circuit Court for Baltimore City

This appeal is from an order granting an injunction, upon a bill filed by the appellee against the appellants, on the 16th of June 1857. The case made by the bill and exhibits is this:

On the 21st of February 1853, the complainant purchased from the defendant Charlotte Gayle, (then Charlotte Tipton,) a farm in Baltimore county, containing eighty-eight acres, for $5544, payable one-third in cash, one-third in four years, and the balance at the death of Mrs. Ann Hill. This sale was evidenced by a written receipt of the said Charlotte, which, after acknowledging the receipt through Geo. W. Davis, agent for Fattle, of $20, as part payment on the farm, specifies the terms of sale, and says, "the credit payments to bear interest from the day of the date of the title of said farm to the said Fattle, and said *farm,* or *title* of said farm, *to be clear of all encumbrances of every nature and kind whatsoever."* Relying upon this agreement the complainant made the cash payment agreed upon, and in April following the said Charlotte delivered possession of the land to him. At the time of this contract the said Charlotte was a widow, and entitled to the land, as *cestui que trust,* under a deed of trust from S. W. Hill, her father, she having by the deed power to sell and dispose of the same as she thought proper, subject, however, to the dower of Ann Hill, the widow of S. W. Hill. On the 5th of April 1853, the said Charlotte, by deed of that date, in which the trustee and Ann Hill united, conveyed the land to the complainant, in which deed, the bill alleges, from inadvertence and ignorance on the part of the complainant, he being wholly unacquainted with legal documents, and being a German, not readily understanding the English tongue, there was no covenant or stipulation inserted for assuring to the complainant a good title as had been stipulated in the written agreement made with the said Charlotte, but simply a covenant of warranty against all persons claiming under the said Charlotte, or her father, the said S. W. Hill, but the complainant avers that he did not, by reason of that omission and inadvertence, lose the benefit of the said agreement but, that the same is still in force, and he is entitled to the benefit thereof. On the same day the com-

Gayle and Wife *vs.* Fattle.

plainant executed a mortgage of the land to the said Charlotte and Ann Hill, to secure the payment of one-third of the purchase money to said Charlotte at the end of four years, the interest on the remaining third to be paid quarterly to Ann Hill during her life, in lieu of dower, and the said remaining third to be paid to said Charlotte in six months after the death of Ann Hill. This mortgage contains an agreement that, if default is made by the mortgagor in payment of the mortgage debt or any part thereof, or the interest thereon or any part of such interest, the whole mortgage debt, principal and interest, remaining unpaid, shall immediately thereafter become due and payable, and it shall and may be lawful to and for the said Charlotte Tipton, her heirs, executors, administrators or assigns, and she or they are hereby fully authorised to foreclose this mortgage and sell all the said mortgaged property in the same manner as if the whole mortgage debt had become due and remained unpaid, and to appropriate and apply the proceeds to the payment thereof, or of so much as may be then unpaid; and as between the said Charlotte and Ann, it was agreed that in case default shall be made in payment as aforesaid, the party towards whom default is made shall be at liberty, and is hereby authorised to use the name of the other jointly with that of herself to foreclose this mortgage. The bill charges that this mortgage does not contain any power to the mortgagee to sell the mortgaged property, nor any assent to the provisions of the Act of 1826, ch. 192; that the complainant has duly and regularly paid the several instalments of interest as they became due, and is willing to continue to pay the same; that in 1854, the said Charlotte intermarried with Benjaman R. Gayle, and that in that year an action of ejectment was instituted in the Circuit Court for Baltimore county, by one Chamberlain against the complainant and another to recover, among other things, the land so purchased by the complainant, the said Chamberlain claiming title thereto or to some portion thereof, and that this action is still pending; that complainant gave written notice of this action to Gayle and wife, and warned them to come forward and defend the title to the property, but they have hitherto neglected to take any step in that be-

half; that, by reason of this action, complainant's title to the land has become clouded, and he is in danger of losing the same or some part thereof; that Gayle and wife have attempted to force a sale of the land, notwithstanding the pendency of this ejectment and the doubt by reason thereof cast upon the title; that complainant has earnestly entreated them to postpone any attempt to sell until this action is decided, when he will be ready and willing, if he is successful therein, to pay the balance of the purchase money, and all interest thereon; but they have refused to grant this request, and persist in attempting to force a sale, which, if carried into effect, will cause a ruinous sacrifice to him; that though the mortgage contains no power to the mortgagee to sell the mortgaged property, yet Gayle and wife have executed a paper purporting to be a power of attorney, in which they profess to authorise their attorney to sell under the provisions of the Act of 1826, ch. 192, eighty acres part of said land, but not the remaining eight acres, and notwithstanding the pendency of the ejectment said attorney has advertised, not only that part of the land mentioned in the power of attorney, but also the eight acres not mentioned therein, for sale at public auction, at the Exchange in Baltimore city, on the 17th of June 1857; that said attorney has failed to give, at least twenty days' notice of the time, place and manner of sale in a newspaper published in Baltimore county out of the limits of Baltimore city, as required by the Act of Assembly in such case made and provided, although there is one or more newspapers now, and have been for more than twenty days past, published in Baltimore county, out of the limits of said city, and that he is about to make a forced sale of the land, at the Exchange in the city of Baltimore, out of the limits of the county where the lands lie, though all mortgage sales, as complainant is advised and charges, are required, by the Acts of Assembly, to be made in the county where the mortgaged premises are situated; that it is doubtful whether Gayle and wife could execute such power of attorney so as to give any power to sell thereunder, and even if they can confer on their attorney power to sell the mortgaged property, yet this paper is defective, because only a portion of the prop-

erty is authorized by it to be sold; that a sale of the property, under the circumstances above set forth, is contrary to the Acts of Assembly, and that any attempt to proceed with such sale, while the aforesaid action of ejectment is pending, will involve the complainant in expensive and disastrous litigation, and may cause a ruinous sacrifice of his property, and that, too, without any corresponding advantage to the said Charlotte, inasmuch as she and her husband will be liable to complainant in case of ultimate loss to him, in pursuance of her above mentioned agreement to give him a good and sufficient title to the land. The prayer of the bill is for an injunction restraining the sale of the property, and for general relief.

The court (KREBS J.) ordered the injunction to issue as prayed, and from this order the defendants, Gayle and wife, having first filed their answers, appealed.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*C. L. L. Leary* for the appellants.

1st. The equity of the bill is founded chiefly on the expression used in the preliminary agreement or memorandum of the 4th of February, that the title "is to be clear of all incumbrances of any nature or kind whatever." The bill avers there was no covenant or stipulation inserted in the deed for assuring the appellee a good title as had been stipulated in the written agreement, but simply a covenant of warranty against all persons claiming under the said Charlotte or her father, S. W. Hill, and that the appellee assented thereto "through inadvertence and ignorance, he being a German and not readily understanding the English tongue." It assumes that the appellant, Charlotte, is liable under a covenant of general warranty, that being the effect of the original agreement; that a breach of the covenant has occurred by reason of the claim set up by Chamberlain, and that the restraining process of the court may be invoked to protect the appellee against the appellant's remedy for the collection of her mortgage claim. Now we deny that the facts developed by the bill are consist-

ent with the hypothesis contended for. The fact that the appellee was a German and did not readily understand English, does not excuse his ignorance and inadvertence in this negotiation, and in the final execution of the contract, because it appears by the preliminary agreement that he was represented by an agent, under whose care the original agreement was signed, and who appears to have watched with equal fidelity his employer's interest and his own. Again, this agreement contains no stipulation for a covenant of assurance of title; indeed there is no stipulation for covenants of any sort. The deed, however, *does* contain a covenant for further assurance besides that of special warranty, and thus provides a more ample security than was required by the terms of the original agreement. Although a court of equity will grant relief in cases of fraud, surprise or mistake, by amending deeds or contracts so as to make them conform to the intention of the parties, where such intention is clearly established, yet, it will be difficult to show, either on principle or by authority, that its jurisdiction, by way of injunction, can be exerted in cases where relief is solicited upon the ground of "inadvertence" or "ignorance" in the party claiming its interposition. Inadvertence is only another name for *negligence,* to which neither courts of law nor of equity will, for a moment, lend their sanction.

2nd. The rights and liabilities of the parties to this contract are to be ascertained and determined by the terms of the deed, and by the mortgage contemporaneously made. In the absence of fraud and mistake, (and neither is alleged in the bill,) *no* effect can be given to the preliminary agreement; it is a contract resting in parol, and the deed and mortgage being of *more recent date* and of *higher dignity in law,* are to be regarded as the exclusive exponents of the intentions of the respective parties to the contract. *Dorsey vs. Smith,* 7 *H. &amp; J.,* 363. *Worthington vs. Bullitt,* 6 *Md. Rep.,* 196. *Chitty on Contracts,* 7, (6*th Am. Ed.*) *Hoare vs. Graham,* 3 *Camp.,* 57. *Stubbs vs. King,* 14 *Sergt. & Rawle,* 206. *Drake vs. Mitchell,* 3 *East.,* 258. *Braddick vs. Thompson,* 8 *East.,* 346. If then the agreement is to be excluded, and the rights

and liabilities of the parties are to be determined by the provisions of the deed and mortgage, there has been no breach of warranty unless it appears from the bill that Chamberlain, the plaintiff in the ejectment suit, claims under the appellant, Charlotte, or under her father, S. W. Hill, and this is neither alleged nor pretended.

3rd. But let it be admitted, for the sake of the argument, that effect is to be given to the preliminary agreement, and that the appellants are liable, as under a covenant of general warranty, does the complainant, by the averments of his bill, show such a breach as would justify him in withholding payment of the purchase money due under the mortgage, and warrant the interposition of this court in restraining the mortgagee from enforcing payment? Is it sufficient to allege, that a claim has been made to the property, or to a part thereof, by a stranger, and that a suit *is still pending*, and that by reason of such suit the title of complainant is "clouded?" We hesitate not to affirm, that the establishment of such a doctrine would work a total overthrow of all confidence in mortgages of real estate as a security for the payment of money. We think the law is otherwise. The averments of the bill are utterly insufficient to justify the court below in its action; the complainant, to entitle himself to relief on this ground, must have alleged or shown an eviction or lawful ouster; to prove an eviction *a judgment of a court of law* is necessary. If the tenant in possession consents to an ouster, it must be a *lawful ouster*, otherwise he consents at his peril. If the title to which he has yielded be not good, he must abide the loss. *Hamilton vs. Cutts*, 4 *Mass.*, 352. *Karthaus vs. Owings*, 2 *G. & J.*, 441. The nature of the adverse claim or encumbrance must be alleged, and it must be a *valid* and *subsisting* encumbrance; the allegation of the bill is, that complainant's title is "clouded" by the claim set up by Chamberlain. Averments so vague and unsatisfactory cannot be permitted to justify the interposition of this court by injunction. The true principle governing cases like the present is asserted by Chancellor Kent, 2 *Kent's Com.*, 472: "If there be no ingredient of fraud and the purchaser is not evicted, the insufficiency of

Gayle and Wife *vs.* Fattle.

the title is no ground for relief against a security given for the purchase money. The party is remitted to his remedies at law on his covenants to insure the title.'' *Bumpus vs. Platner*, 1 *Johns. Ch. Rep.*, 218. *Bates vs. Delavan*, 5 *Paige*, 307. *Abbott vs. Allen*, 2 *Johns. Ch. Rep.*, 521. The leading case, adverse to the principle settled by the authorities above recited, is, *Johnson vs. Gere*, 2 *Johns. Ch. Rep.*, 546, determined by Chancellor Kent only a few days after the decision in *Abbott vs. Allen*, and somewhat similar in its circumstances to the present case. But the authority of that case has been utterly repudiated and denied by repeated decisions in the same State, and the principles of the cases of *Abbott vs. Allen* and *Bumpus vs. Platner*, applied in all cases where it appeared that the complainant was in possession of the land and had an adequate remedy under the covenants of his deed, and where fraud was not alleged. See *Bates vs. Delavan*, 5 *Paige*, 307. *Woodruff vs. Bunce*, 9 *Paige*, 445, and *Miller vs. Avery*, 2 *Barbour's Ch. Rep.*, 594. The opinion of the learned Chancellor in the case last cited is especially commended to the consideration of the court. The later New York decisions sustain this reasoning and adopt the principle established in *Abbott vs. Allen*, whilst Chancellor Kent himself, in his commentaries, although he speaks in approbation of the doctrine established in the latter case, makes no mention of his decision in *Johnson vs. Gere*. See also *Banks vs. Walker*, 2 *Sandf. Ch. Rep.*, 344; *Platt vs. Gilchrist*, 3 *Sandf. Rep.*, 118; *Rawle on Covenants for Title*, 638, 654, 674, *(note* 2,) and the remarks of the author on this point. If a contrary doctrine be recognized by the courts, it is easy to see that the payment of purchase money by the vendee, and the vendor's remedy therefor, may be indefinitely postponed, and in fact defeated by collusion between the vendee and strangers successively claiming title to the mortgaged property, while all securities, by way of mortgage of lands, created under the circumstances of this case, must be regarded as utterly valueless. The foregoing remarks are submitted under the supposition that the preliminary agreement is to have effect as developing the intention of the parties, and as sub-

jecting the appellant to liability under a general warranty. This, however, we deny, and insist, that the rights and liabilities of the parties to this contract must be determined by the deed and the mortgage of the same date, without any reference whatever to the terms of the preliminary agreement; that the deed and mortgage are the only safe exponents of the intentions and motives of the parties thereto, and that if any incongruity exists between the terms of the written agreement and the deed and mortgage subsequently executed, it is but fair and reasonable to infer, that in the six weeks which intervened between the signing of the agreement and the execution of the deed the parties had changed their minds in regard to the terms of the contract, and that the deed and mortgage were prepared and executed with reference to such altered intentions. There are other points of difference between the terms of the preliminary agreement and the mortgage, as for instance, the period fixed for payment of the last instalment of the purchase money; the agreement stipulating that it should be paid "at the death of Mrs. Ann Hill," and the mortgage providing for its payment "*in six months after* the decease of Ann Hill," and yet it surely will not be contended, that the terms prescribed by the mortgage must be disregarded and full effect given to the original agreement. The liability, then, of the appellant, Charlotte, is to be determined by the covenants in her deed; it is a covenant of *special* not of *general* warranty, and the language used is such as to justify a violent presumption that special care and deliberation were employed in framing it. The warranty is "from and against herself and her heirs, and all and every person and persons legally or equitably having, claiming, or to claim, any estate or interest therein, or right or title thereto, through, by, or under her father, Samuel Waddoms Hill." There is no breach of this covenant shown by the averments of the bill. The plaintiff in the ejectment suit, Chamberlain, claims the land under a title paramount; it is not alleged or pretended that he claims through, by, or under the appellant, Charlotte, or her father, Samuel W. Hill; no liability, therefore, can attach, or has attached, to her, under the covenants of her deed: "A vendor

selling in good faith is not responsible for the goodness of his title beyond the extent of the covenants in the deed." *Falconer vs. Griffith,* 3 *Md. Ch. Dec.,* 157, affirmed in *Falconer vs. Clark,* 7 *Md. Rep.,* 177; *Morris vs. Harris,* 9 *Gill* 27; *Middlekauff vs. Barrick,* 4 *Gill* 300. We contend, therefore, that not only on principle, but in accordance with the weight of authority, the appellee is not entitled to withhold the unpaid purchase money due the appellant on the ground of failure of consideration, nor under the circumstances of this case, and while there is an adequate and appropriate remedy at law, can the restraining process of this court be properly invoked. The appellant has thus far fulfilled all her obligations under the contract as it is disclosed by the complainant's bill; she is willing and ready to discharge any further liability imposed on her by her contract; but she *does* protest against the court making a new contract where one already exists, the terms and stipulations of which cannot admit of a reasonable doubt. "It would indeed lead to infinite mischief if writings, which show clearly the agreement of parties, were permitted to be contradicted and new stipulations interpolated; there would be no security in property, and no faith reposed in the most solemn conventions." *Watkins vs. Stockett,* 6 *H. & J.,* 444.

4th. The objections urged by the bill against the power of attorney, and to the other proceedings authorised by the Act of 1826, ch. 192, are without foundation; and if these objections were valid, they should have been taken *under exceptions to the sale when made and reported.* They cannot justify the exercise of the extraordinary power of this court by way of injunction. If, as is alleged, it be questionable whether the appellants were authorised or competent to execute the letter of attorney under which the lands were advertised, the objection would go to the validity of the title acquired by the purchaser, and if the attorney acted without authority, most assuredly no title would pass; so, also, if, as the bill avers, the power of attorney "professes to authorise" the sale of a tract of land containing eighty acres, and the attorney without authority assumes to sell *two* tracts comprising eighty-eight acres, the party injured would be the purchaser of a worthless title, and

Gayle and Wife *vs.* Fattle.

not the complainant, who sustains no damage.   We contend, therefore, that, applying to this case the ordinary principles governing the exercise of the restraining jurisdiction of courts of equity, the action of the court was erroneous; the complainant by his bill presents no valid claim for relief, and the injunction ought to be dissolved.

5th.  But the Act of 1826, chap. 192, sec. 8, expressly prohibits the granting of injunctions to stay proceedings under this Act, unless the mortgage debt or a part thereof has been paid and credit is refused to be given, or *unless some fraud, which shall be particularly stated in the bill,* was used by the mortgagee in obtaining the mortgage.  No fraud is alleged or pretended in this case; it is clearly within the prohibition provided by this clause of the Act of 1826, and when the harrassing and ruinous delay, to which the appellants have been subjected by this proceeding, is duly considered, the wisdom and necessity of such a prohibition are clearly displayed.

*Chas. W. Ridgely* and *Levin Gale* for the appellees.

The primary object of this bill is an injunction to stay the sale, and its secondary object to reform the contract.   The greater portion of the appellants argument is devoted to establishing two propositions.

1st.  That the execution of the deed conveying the land without inserting in it a covenant of general warranty, did away with the original contract, and made the vendor's liability to be determined entirely by the covenants in the deed.

2nd.  That the existence of a covenant of general warranty is no defence to a proceeding to foreclose a mortgage for the purchase money, until an actual eviction has taken place.

These positions, as general propositions of law, are not denied, but the first is liable to the qualification, that the contract as perfected, may be reformed in case of mistake; and such is substantially the charge made in this case.   And if this be established the second objection has no force; since the complainant is not in the position of one having a covenant upon which he can sue at law, but is obliged to come in to a court of equity for redress.   And equity once having obtained possession of the matter will proceed to give full and adequate

relief.   But the question raised by this appeal relates solely to the propriety of the injunction restraining the sale, which was about to be made.   And on this question, besides the points growing out of the contract, there are several other reasons we think sufficient to sustain the injunction.

1st.  The only authority for making the sale was the power of attorney.   Now, we say a married woman cannot constitute or appoint an attorney, and that this paper purporting to be a power of attorney was therefore a mere nullity.   All the powers which a married woman can exercise, are either conferred by express grant or by Act of Assembly.   We know of no Act of Assembly, authorising the execution of such a power of attorney as this.   Nor does it appear that any special power has been conferred upon this lady.

2nd.  But the power only authorized the attorney to sell a portion of the mortgaged premises, viz., the eighty acres, and omitted entirely the eight acres, which formed a part of the whole eighty-eight acres mortgaged.   The Act of 1826, ch. 192, under which they professed to act, does not authorize the appointment of an attorney *to sell a part of the mortgaged premises*, especially in such a case as this, where it was "a part of the whole tract occupied by complainant," and sold and mortgaged as one farm.   The power of attorney must authorize a sale of the whole, otherwise, instead of one sale, there may be fifty different sales, under as many different powers and attorneys.   It is we think doubtful, whether, under this act, the attorney could sell less than the whole, since the only authority given by the act is to sell *"the mortgaged premises,"* but certainly the attorney ought to be invested with power to sell the whole in case he should think proper.   But, by the power of attorney executed in this case, authority was conferred upon the attorney only to sell a part, and no matter how disastrous the sale might be to the parties, he could go no further without exceeding his authority.   Such a power of attorney we do not think was within the contemplation of the Act.

3rd.  Suppose, however, the first and second objections to be obviated, yet, under a power to sell a portion, the attorney

Gayle and Wife *vs* Fattle.

undertakes, and was about to sell the whole.   In this he certainly exceeded his authority.

4th.  This property is situate in Baltimore county: and by the act of 1825, ch. 203, sec. 10, all sales of mortgaged property must be made in the county where the lands lie.   By the 4th section, they are also required to be advertised in the county.   In this case the sale was about to be made at the Exchange, in the city of Baltimore, and was not advertised in the county.   Either of these objections, we think, was fatal to the validity of the proposed sale.   It may be said, that the Act of 1826, ch. 192, was passed after that of 1825, ch. 203, and that the latter Act is silent on the subject of the place where the sale is to be made, and directs the advertisement to be made in the city.   When the Act of 1826 was passed, Baltimore city and Baltimore county formed together one county, of which the city was the county town or capital, and it was unnecessary, therefore, to repeat the provisions of the 10th section of the act of 1825, which is a general law, and by its terms applies to *"all mortgage sales."*   Since the division between the city and county of Baltimore, by which each has become a separate county, the Act of 1825 comes in and applies *certainly, we think, as to the place of sale,* for there is nothing in the Act of 1826, inconsistent with that part of the Act; and the settled rule is, that a new Act does not repeal a former one, unless inconsistent.   As to the advertisement, since the Act of 1826 makes its own provisions, that point may be doubtful, but we think a true construction will lead to the conclusion, that it must be advertised within the county, since the separation has taken place.

But, say the appellants, you should have allowed the sale to go on, and excepted to its ratification.   A sale, without authority under an improper power of attorney, and of more land that it entitled the attorney to sell, would not have injured the owner, it would only have affected the purchaser.   We think, however, that the owner of property is not bound to stand quietly by and see his property offered for sale, without proper authority.   Unsuccessful efforts to sell property in-

11      v. 14.

variably have an injurious effect upon its market value. If a sale is once set aside, and the property is again offered for sale, the fact of the first sale being vacated is noised abroad, whilst the reasons which induced it are frequently misrepresented, distorted or loss sight of. The owner, if compelled to let the sale go on, and seek his redress upon exceptions to the ratification, would be put to the dilemma of indirectly countenancing an irregular and improper sale, or by coming forward and announcing his objections depreciate the value of his property, and lessen his means to pay his debts. We do not think he should be put to this election. The irregular proceedings in this case had an obvious tendency to depreciate and lessen the value of the property, to cloud the complainant's title, and to hamper and annoy him in the exercise of his rights. An in-. junction to stay the sale was the only remedy adequate to relieve him from the embarrassments produced by the illegal and irregular acts of the defendants, and we think he was clearly entitled to it under the circumstances. See *McCann vs. Taylor,* 10 *Md. Rep.,* 418.

But it is contended, that the 8th section of the Act of 1826 prohibits an injunction from issuing in this case. A proceeding, to be within the prohibition, must be *"a sale authorised by this Act."* It is not sufficient that a person should say he is proceeding under the Act: *he must bring himself within its provisions.* Now if there is that force in the various objections above enumerated, to the acts, doings and authority of this attorney, that we think there is, then he was not proceeding under the provisions of the law in question, and the sale he was about to make was not *"authorized by the Act."* The complainant was not, therefore, forbidden to enjoin the sale. The section requires that the proceedings necessary to bring the sale within the Act should be first complied with, and then provides against injunctions founded on vague and general objections to the mortgage claim. These, it says, shall not be sufficient. The objections must be specific, and under oath, showing how much has been paid, and how much is due, or showing the particular fraud charged in reference to the mortgage. The section cannot be so twisted as to prohi-

bit injunctions in cases where every provision of the law has been disregarded, or where no right to sell existed at all. Suppose, for instance, that the attorney had, without any authority from the mortgagees, and of his own motion, undertaken to sell this property, and that complainant, upon enquiring of Gayle and wife, had been informed by them, that they had not authorized him to sell, and did not desire a sale, can it be pretended that Fattle would have been compelled to wait until the sale had been made, and then only be entitled to relief? Now our objections go fully to the point, that the attorney was not proceeding according to the provisions of the Act. For if the first objection we make is valid, he was proceeding without any authority at all. If the second, he was proceeding against the provisions of this Act. And the third objection shows, we think clearly, that as to the eight acres, he was proceeding without authority. The fourth objection shows, that his proceedings were in violation of the Act of 1825, which, we think, has since, by the separation of the city and county, become a necessary part of any proceeding under the Act of 1826. Upon each of these points we think the case does not come within the prohibition.

The appellant's counsel, in his argument, says, that we do not allege or pretend to charge fraud in this case. It is true we do not charge an intentional, moral fraud, but we do insist, that the facts set forth in the bill do amount to a legal fraud, and upon that ground, if no other, we were entitled to stay an illegal and unwarrantable sale.

Le Grand, C. J., delivered the opinion of this court.

This is an appeal from an order granting an injunction. Under the decisions of this court we are confined to the case made by the bill, which may be thus stated: On the 21st day of February 1853, the appellee purchased from the appellant, Charlotte Gayle, (then Tipton,) the land mentioned in the proceedings, and paid a part of the purchase money, taking from the vendor a receipt for the same, which, after acknowledging the payment made, proceeds to declare, that the title to the farm shall "*be clear of all incumbrance of every nature and kind whatsoever.*"

Subsequently a deed was made to the appellee for the land, and a mortgage executed by him under the Act of 1826, ch. 192, to secure the amount of the remainder of the purchase money when it should become due and payable. The deed did *not* contain a covenant of *general* warranty of title against all the world. The mortgage being due, the sale authorized by it, in that event, being about to be proceeded in, the bill in this case was filed to enjoin such sale until such time as an ejectment suit, instituted by one Chamberlain, for the land, should be determined, and for reformation of the deed so as to make it conform to the terms of the receipt given by the appellant, Charlotte, at the time of the sale.

There is no allegation of *fraud* against the appellants, the assent of the appellee to the deed, as it was executed, being, as is averred, "through inadvertence and ignorance, he being a German and not readily understanding the English tongue." Nor is there any averment that the claim set up by Chamberlain, in the action of ejectment, is *valid* and *subsisting*, the charge being, that by the action of ejectment the title of the appellee is "clouded."

It must be recollected, that the sale sought to be enjoined is under the Act of 1826, ch. 192, the eighth section of which provides, that no injunction shall be granted to stay any sale, or any proceedings after any sale authorized by the Act, unless under peculiar circumstances, *none* of which are specified in the bill of complaint. The part of the section bearing on this subject is in these words: "No injunction shall be granted to stay any sale, or any proceedings after sale, authorized by this Act, unless the party praying such injunction shall be also a party to the deed of mortgage, in virtue or pursuance of which the property, interest or estate, sold, or offered for sale, shall have been mortgaged, or shall claim under such party a right, title or interest, in or to such mortgaged premises, derived and accruing after the time of recording such mortgaged deed; *nor unless such party shall, on oath or affirmation, allege, that the mortgage debt, and all interest due thereon, has been fully paid, or that some part of such debt or interest, the amount of which he shall state, has been paid, and that the*

*mortgagee, or person acting under him or her, refuses to give or allow credit for such amount, or that some fraud, which shall be particularly stated in the bill or petition for injunction, was used by such mortgagee, or with his knowledge, in obtaining the deed of mortgage."*

This quotation from the Act would seem to be conclusive of this case. But, if it were not, it is clear to us, that, on other grounds, the averments of the bill are insufficient to justify the injunction. We waive all inquiry in regard to some of the questions discussed by the respective counsel, particularly those which relate to the alleged merger of the words in the receipt by those contained in the deed, and the right, if any, of the appellee, to have the deed so reformed as to make it conform to the title stipulated for by the receipt of the 21st of February 1853. It will be time enough hereafter to consider them. Admitting, *ex argumenti*, the efficacy of the pretensions of the appellee in these particulars, the question arises, ought an injunction to issue simply because a *stranger* has thought proper to institute an action of ejectment, there being no allegation that his claim has any validity whatever? We think clearly not. It is useless to go over in detail the many cases on this subject. We content ourselves with a reference to *Miller vs. Avery,* 2 *Barbour's Ch. Rep.,* 594, a case conclusive of this, and now everywhere in this country acquiesced in. There, Chancellor Walworth, in alluding to the decision in *Johnson vs. Gere,* 2 *Johns. Ch. Rep.,* 546, says: "I think it evident that the reporter was under a mistake in the statement of the case, for it cannot be possible that he intended to decide that a mere claim of a paramount title, by a third person, and the bringing of a suit upon that claim against the purchaser was sufficient to authorize the court to stay the vendor, who had warranted the title, from proceeding at law or in equity to collect the unpaid purchase money. If the law was so, any vendee, who was not ready to pay his purchase money when it became due, *might make a secret arrangement with some third person to claim the premises and bring an ejectment suit therefor, and thus tie up the vendor from collecting indefinitely."* The good sense expressed

in this language is too obvious to need enforcement; it is commended by Chancellor Kent in his *Commentaries*, although he delivered the opinion in *Johnson vs. Gere*, and has been recognized and adhered to in a great number of subsequent decisions.

If the sale be made without a compliance with the requisitions of the Act of 1826, ch. 192, when it shall have been reported, the appellee will then have an opportunity to point out the departure and to claim whatever advantage it will give him.

*Order reversed, with costs, and cause remanded for*
*further proceedings under Act of* 1832, *ch.* 302.
(Decided July 1st, 1859.)