## Weakland *et al.* *versus* Hoffman.

50  513
137  138

*Defalcation from unpaid purchase-money for spoliation by holder of adverse title, when allowed.*

A vendor, under articles of agreement, sold land for which ejectment was pending, and on recovery put his vendees in possession, from which they were evicted, on reversal of that judgment: upon a re-trial, judgment therein was rendered against him which was suffered to remain: but succeeding in a second ejectment, he restored his vendees to the possession: In ejectment by him against these vendees to enforce payment of the unpaid purchase-money, *Held*

1. That the vendees might defalcate in equity for the spoliation of the growing timber by the holder of the adverse title while in possession under the order of restitution, though under the articles of agreement they were not entitled to a conveyance until the purchase-money was paid: but

2. That this defence could not extend, in the action then pending, beyond the unpaid purchase-money.

ERROR to the Common Pleas of *Cambria county.*

This was an action of ejectment, by Murray Hoffman against Simon Weakland, Augustus J. Weakland, James Weakland, and John Weakland, for a tract of land in Clearfield township, containing one hundred and seventy-three acres and forty-seven perches.

The case was this:—On the 16th January 1849, Henry Barclay entered into an agreement with Simon and Augustus J. Weakland, for the sale and conveyance to them by deed with covenant of general warranty, of one hundred and seventy-three acres and forty-seven perches of land in Cambria county, parts of surveys in names of Samuel Bethel and William Wills, at $2 per acre.

Upon this contract Weaklands made five payments from January 16th 1849 to January 21st 1851, $193.50, took possession of the land under the agreement, and made improvements upon it.

Henry Barclay had instituted an action of ejectment to No. 27 October Term 1847, against John McGuire and others, for a large number of tracts of land, including the lands sold by the agreement to the Weaklands, who were at that time in possession of them as tenants of James Ross. A verdict for plaintiff was rendered in July 1848, upon which judgment was rendered October 5th 1848. A writ of *hab. fa. poss.* issued to No. 22 April Term 1849, by virtue of which Barclay was put in possession. The case was taken to the Supreme Court, and on the 20th November 1851, judgment was reversed and record remitted to court below. On the 31st January 1852, a writ of restitution was awarded, which was executed on the 14th, 18th, and 26th February 1852, and upon it the sheriff made the following return:—

" Delivered possession of part of the premises described in the

14 WR.—33

[Weakland *et al.* v. Hoffman.]

annexed writ to James McDermott, a part to the agent of John McGuire, a part to the agent of John Nelson, and the balance of the described premises to James Ross : none of the other defendants named in said writ appearing to demand possession except Frederick Yingling, John Burge, Valentine Glass, James Weakland, and Augustus Weakland, to whom the said sheriff said he was ready to deliver them possession (*except James Weakland and Augustus Weakland*), but the said Frederick Yingling, John Burge, Valentine Glass, James Weakland, and Augustus Weakland made some arrangement with James Ross, and on and by that arrangement possession was delivered by said sheriff to James Ross.

　　" So answers　　　　　　" JOHN BRAWLY, Sheriff."

James Ross made a lease of the premises to the Weaklands, who occupied under that lease, and paid rent for it until January 9th 1852, when Ross put his son into possession, who occupied it, took the saw-mill which the Weaklands had put in repair, and ran it, cutting large quantities of timber off the premises, and materially diminishing the value of the property. In 1857, the title of Barclay was again successful, and the Messrs. Weaklands were restored to possession. Murray Hoffman, who it was agreed upon the trial had succeeded to the title of Henry Barclay, brought this action of ejectment to enforce payment of the unpaid purchase-money. Evidence was given under exception of the above recited state of facts, and that the condition of the property was much worse when Weaklands were restored to possession than when they were dispossessed, showing also the amount and value of timber cut off the premises during the time they were out of possession, and the jury were asked to take into consideration the losses and injuries sustained from these causes by the Weaklands, and to compensate them for thereby deducting them from any amount that would be due under the agreement.

The court instructed the jury that this claim could not be allowed, and directed them to find in favour of the plaintiff, to be released upon payment of the amount due under the agreement without any deduction ; which was the error assigned for defendants after a verdict and judgment in accordance with said instructions.

*John Fenlon* and *John Scott*, for plaintiff in error, argued that the action of ejectment to enforce payment of the purchase-money being in Pennsylvania a substitute for a bill in equity, is to be affected with all those considerations that would affect a bill for that purpose in the contemplation of a chancellor : Brawdy *v.* Brawdy, 7 Barr 158. That where relief is sought by bill, and defendant seeks compensation in resistance to or modification of

[Weakland *et al. v.* Hoffman.]

plaintiff's claim, the maxim prevails that he who seeks equity must do equity: 2 Story's Eq. Jur., § 799, a, b, and note 3. That where the vendor was bound to convey with covenant of general warranty, if deed had been made, the yielding to the writ of restitution and taking lease under the successful claimant would have been an eviction which would have entitled vendee to recover on the covenant: Ross *v.* Dysart, 9 Casey 452. And that where the vendor seeks to recover the full value of his legal title, is it equitable to permit him to do so when, upon a proceeding instituted by himself, that legal title has not been sufficient to keep his vendee in possession ? At the very least they ought to be compensated to the extent of interest in the whole purchase-money during the time from 1852 till 1857; compensation should have been allowed defendants, and its amount left to the jury.

"That in a proper case, under our practice, compensation might be allowed in ejectment by a verdict for the plaintiff, subject to the condition of his not enforcing the judgment till he had paid a certain sum of money to be ascertained by the jury:" Lawson *v.* Burt, 4 W. & S. 29. Where vendor cannot make a complete title, or where he has been unable punctually to comply with terms, the purchaser is allowed his election to proceed with the purchase or abandon it altogether. The general rule in all such cases is, that the purchaser, if he chooses, is entitled to have the contract specifically performed, as far as the vendor can perform it, and to have an abatement out of the purchase-money, or compensation for any deficiency in the title, quantity, quality, description, or other matters touching the estate: 2 Story's Eq., § 779.

A court of equity will not drive the defendants below to any circuity of action, and if after this lapse of time compensation be not allowed in this proceeding, they suffer a wrong for which there is no remedy.

*R. L. Johnston* and *F. A. Shoemaker*, for defendant in error.— The single question raised by the record in this case is, whether the plaintiff below shall be to recover interest, according to the terms of his agreement with the defendant.

The precise question has perhaps not been decided, but analogy as well as common sense vindicates the judgment of the court below. Nor do the authorities quoted by the plaintiff in error impair this analogy. Brawdy *v.* Brawdy was ·an action by the vendee, in an alleged parol contract, in which the court below ruled the case against the plaintiff without permitting it to reach the jury. The position referred to in Story has no application· whatever to a case like the present, but to the relief extended in equity to innocent purchasers without notice, who have made improvements when the legal title was in another. Here improve-

[Weakland *et al. v.* Hoffman.]

ments are not pretended beyond repairs of the saw-mill, by which they were realizing money on the property they still hold, and desire to hold. Larison *v.* Burt was an ejectment by the vendee, and the ruling of the court does not in the least infringe upon the position of the plaintiff here. In order to give the semblance of a case the plaintiff in error resorts to the forced analogy of landlord and tenant, and cites the case of Ross *v.* Dysart, 9 Casey 452. There a regular tenancy existed in writing for a term of years, with mutual covenants, on the one side for quiet possession, on the other for payment of rent, and on eviction the court held the tenant discharged from the payment of rent.

None of these authorities, it is submitted, touch the merits of the case now before the court. Here the plaintiff covenanted to make the defendant a general warranty deed, which may well be done, as the title is at rest, and the defendants in quiet possession. But (to take a strong case for the defendants below), suppose the plaintiff had made his deed of general warranty to the defendants, and, after taking possession under it, a temporary interruption of the possession under adverse title had taken place, the defendants being ultimately restored to possession under their original title, would it be pretended that they could turn round on their warranty, and recover damages for the time they had been out of possession? If not, then we are at a loss to see how they can refuse to comply with the terms of their agreement.

A purchaser, whether by deed or agreement, is warranted a good title, but he is not warranted against litigation or its effects, any more than against trespass, or even fire or flood. If his title fails, he has his remedy; otherwise, he must comply with his contract.

The opinion of the court was delivered, June 29th 1865, by

AGNEW, J.—The Weaklands bought of Barclay during the pendency of an action of ejectment for lands, part of which constituted their purchase. Shortly after his sale he recovered and then let them into possession. Subsequently his judgment was reversed, and the possession restored to his adversary under a writ of restitution in February 1852. In the mean time the Weaklands had paid him a considerable part of the purchase-money, the whole of which fell due January 16th 1852. Barclay's ejectment was tried again in 1853, and a verdict and judgment were rendered against him, which he suffered to remain final; resorting to a second ejectment in which he recovered, and was put into possession in 1857. Weaklands were then restored to the possession under their purchase. In the mean time the land was stripped of valuable timber by Ross and his tenants. Hoffman, who succeeded to Barclay's title, brought this ejectment in the court below to enforce payment of the remainder of the purchase-

[Weakland *et al. v.* Hoffman.]

money by the Weaklands, under their contract with Barclay, and the question was, whether they could set up a defence in equity on account of the spoliation of the timber.

The Weaklands were not entitled to a conveyance by the terms of their agreement until payment of the whole purchase-money, and had taken no covenant for a prior possession. As a general rule, a contract to sell does not, *ipso facto*, carry a right of possession until conveyance, in the absence of a covenant to let the party into possession. It is very common, it is true, to let the purchaser in upon a sale, but we know of no rule of law, by which the possession, so important a security to the rights of the vendor, shall pass from him without his covenant or his consent. The possession of the Weaklands was merely permissive. Under these circumstances it would be very doubtful whether they could claim damages from their vendor for the loss of the mere profits of the land by reason of their eviction.

But the claim here is for a loss of what constituted a part of the land itself. Growing timber is a part of the realty, and passes with it under the conveyance. Oftentimes it constitutes the chief value of the land. It is part of the inheritance, and its spoliation is waste. The verdict and judgment which Barclay suffered to become final in the first ejectments, estopped him from denying the rightfulness of the writ of restitution, and the eviction of the Weaklands under it. When dispossessed, the Weaklands stood as to Barclay in a position certainly as favourable as if they had not been let into possession under their purchase, and if between the sale and a tender of a conveyance by Barclay he had himself stripped the land of the timber, or suffered it to be done, in equity his claim for the purchase-money would certainly be liable to reduction. Nor does it seem very clear how the fact that the spoliation was committed by an adverse claimant, whom he had suffered to recover and take possession, can change this right to defalcate in equity. Had a portion of the land itself been recovered by virtue of a better title, it would clearly be a good defence to the payment of the purchase-money to that extent. Now, in equity, what difference is there between the cases ? Here, though Barclay has made good his title, by a second ejectment, to the land itself, the timber taken off in the mean time is wholly gone, and cannot be restored. It is a destruction and waste of the inheritance, as detrimental to the Weaklands as the loss of a portion of the land. It was caused by a recovery under a title of some sort, which, for the time being, the Weaklands could not resist, and against which Barclay, the holder of the title and its muniments, and who had covenanted to convey with general warranty, was clearly the person who should have defended. His ejectment was pending when he sold to them, and he and not they was the person to prosecute it with effect. The right to recover

for the spoliation of the timber against Ross vested in Barclay by his recovery in the second ejectment. He could have given notice and recovered in the ejectment itself, or proceeded afterwards by an action of trespass for mesne profits: Drexel *v.* Mann, 2 Barr 273; Powell *v.* Smith, 2 Watts 126; King & Shoenberger *v.* Baker, 1 Casey 186. Barclay therefore having sold during a pending ejectment, holding in his own hands the legal title and the muniments for its prosecution, suffering a recovery against his vendees, and afterwards entitling himself to the value of the timber taken by his recovery in the second ejectment, ought not now to turn the loss over upon his vendees, or compel them to follow Ross for the value in a course of doubtful litigation.

We think, therefore, that the value of the timber taken by Ross while in possession under the order of restitution, and before the recovery in the second ejectment, can be set off as an equitable defence to the payment of so much of the purchase-money. But the defence cannot extend beyond the unpaid purchase-money, for this only is the subject of controversy.

The judgment is therefore reversed, and a *venire facias de novo* awarded.

Woodward, C. J., dissented, and filed a dissenting opinion.