SOUTH BOSTON IRON COMPANY *vs.* WARREN BROWN.

*Promissory note—what estops maker to deny consideration.*

Where, at the request of the party with whom he deals, one makes his promissory note (which is to be a partial payment for a piece of work to be done for him) payable to a third party, who is a creditor of the party with whom he contracts for the work, and it is credited by the payee to such party in good faith, the maker cannot set up a failure of consideration, as between himself and the party with whom he deals, in defence of a suit upon such note, in the name of the payee.

The governing principle in this case is not distinguishable from that which was laid down in *Munroe* v. *Bordin*, 65 E. C. L. R., 862.

ON REPORT.

ASSUMPSIT upon a promissory note, defended upon the ground of want, or failure, of consideration. The terms and tenor of the note, and the circumstances under which it was given, appear in the opinion.

*J. H. Drummond*, for the plaintiffs.

Though the machine he expected never was delivered to the defendant, so that he never received the anticipated benefit, yet he gave the note to the Irving Bark Extract Co., making it at their request, run to the South Boston Iron Co., (which had no dealings with Brown) and the Extract Co., according to their original intention, as indicated by the very tenor of the note, passed it to

the plaintiffs for a full and valuable consideration between these parties. As the Irving Bark Extract Co., received from the Iron Co., the full value of the note for it, it is immaterial whether or not Brown ever received any equivalent for his note. 1 Parsons on Notes, 183, 199, and cases there cited.

*Strout & Holmes*, for the defendant.

It appears by Mr. Johnson's testimony that in taking this note, which was delivered to the plaintiffs at the same time with the order for the machine, for which it was part payment, he acted for, and as the agent of the South Boston Iron Co., who were authorized to manufacture machines for the licensees of the Irving Bark Extract Co., the proprietors of the patent. His agreement with Mr. Brown was never carried out by the company he represented in making it, who never made any machine for Mr. Brown, and therefore he was fairly entitled (as Mr. Reed, the company's agent at its Boston office, told him) to have his note returned to him, since the consideration for it had utterly failed.

BARROWS, J. Where, at the request of the party with whom he deals, one makes his promissory note, which is to be a partial payment for a piece of work to be done for him, payable to a third party, who is a creditor of the party with whom he contracts for the work, and it is credited by the payee to such party, in good faith, the maker cannot set up a failure of consideration as between himself and the party with whom he deals, in defence of a suit upon such note in the name of the payee.

The governing principle in this case is not distinguishable from that which was laid down in *Munroe* v. *Bordin*, 65 E. C. L. R., 862.

On the twenty-seventh of April, 1868, the defendant gave to an agent of the Irving Bark Extract Co., a written order addressed to said Extract Co., to make for him a "complete set of works for the making of extract according to your patents, such as are being made by the Boston Iron Co.," not to exceed in cost five thousand dollars (with a stipulation that he

should have as much deduction from that price as the most favored customers) "to be paid in a note for $1,500 on four months this day given," and the balance in four months from date of delivery. The note here spoken of is the note in suit made payable by the defendant directly to the South Boston Iron Co., with the knowledge that the Iron Co. was manufacturing the machines, while the Extract Co. were the exclusive owners of the right to make and use them. He dealt with the Extract Company. His order is addressed to them, and the business was transacted by one Johnson, a member of the Extract Co., who was also their general sales agent. While Johnson testifies that he was authorized to act for the plaintiffs also, this claim of authority is denied by the plaintiffs, and with the single exception of this note, all the transactions among the parties so far as they were committed to writing appear to favor this denial, and to contradict Johnson who is the principal witness for the defence.

The plaintiffs' testimony seems to establish the following state of facts : They had been employed in making castings according to patterns furnished by the Irving Bark Extract Co., who were largely in their debt ; they had a contract with that company to build five bark mills like one previously made by them for the Irving Bark Extract Co., for $4,500 each—cash on delivery in Boston, the work to be done under the supervision of one B. Irving, constructing engineer of the Irving Bark Extract Co. ; and they proceeded under his direction, having no model, but working under Irving's direct supervision some months, and having one of the machines delivered and the other four partially constructed ; when the work was finally stopped by the consent of the Irving Bark Extract Co., (and for aught that appears without any fault or deficiency on the part of the plaintiffs who were informed by the Irving Bark Extract Co., that the machines though thus built according to the directions of their own contracting engineer, did not answer the purpose it was expected they would,) the Irving Bark Extract Co., remained largely indebted to the plaintiffs. While the work was in progress the plaintiffs agreed to

receive the defendant's note here sued in part payment of their account against the Irving Bark Extract Co., and did thus receive and credit it. Upon this showing the case falls within the rule laid down in the outset, and the defence fails.

If Mr. Brown, by reason of a misplaced confidence in the Irving Bark Extract Co., and the value of their invention, and the practical utility of the machines they were constructing, has given his note to a *bona fide* creditor of theirs, it is to them that he must look for a reimbursement when he has paid his note. The plaintiffs were under no obligation to him. A good consideration passed from them to the Irving Bark Extract Co. That the defendant did not receive what he contracted for, from the party with whom he dealt, was no fault of the plaintiffs, nor can Mr. Brown resist the payment of this note, on the ground of a want or failure of consideration, any more than he could allege such a defence if he had given the same note purely as a matter of accommodation to the Irving Bark Extract Co., in payment of their debt to the plaintiffs. The defendant claims to be let into his defence upon the ground that Johnson of the Extract Co., was the agent of the plaintiffs, and that he dealt directly with the plaintiffs for the machines. But this is contradictory of his own order to the Irving Bark Extract Co., with whom he dealt on different terms, both as to price and time of payment, from those upon which the Iron Co., were making the machines for the Extract Co.

Then the defendant says, if he did give the order in the first place to the Extract Co., it was made over with his consent together with the note to the Iron Co., who (he claims) took the note with the understanding that they were to take the contract off the hands of the Extract Co., and assume its performance so far as Mr. Brown was concerned. If the Iron Co., were content to do this and to guaranty the sufficiency and utility of the machines, when they had no interest in the patent, and to become responsible for the delivery of the machine to Mr. Brown, it would put a different face upon the case.

It is not worth while for us to spend time now in inquiring

whether this was a reasonable or probable thing for either party to do under the circumstances, or whether there is any evidence to sustain this view; for the case is not submitted to us to dispose of upon the facts as well as the law.

The stipulation in the report is that if the court shall be of opinion that the action is legally maintainable upon the admissible evidence, the case is to stand for trial; and such is the result.

*Case to stand for trial.*

APPLETON, C. J., WALTON, DICKERSON, DANFORTH and VIRGIN JJ., concurred.