## UNSELL *v.* HARTFORD LIFE & ANNUITY INS. CO.

(*Circuit Court, E. D. Missouri, E. D.*   October 14, 1887.)

**1. INSURANCE—FORFEITURE—WAIVER.**

When a policy of life insurance provides that payments of premiums should be made on a given day or days, and that, in default of such payment at the time specified, the policy should be void, but the company issuing such policy afterwards pursues a practice of accepting premiums after the time of payment specified in the policy, without insisting upon the forfeiture, then such practice of receiving premiums overdue operates as a waiver of the right of forfeiture.

**2. SAME.**

A receipt of an insurance company for an overdue premium contained the following condition: "It being understood that the receipt by this company of payments after date due is only on condition that the member is alive, and in good health, at the date of such receipts." *Held*, that such receipt, even though it be for an assessment paid after it was due, does not tend to show a waiver by the company of its right of forfeiture for non-payment of dues at maturity, except in the event that the assured is alive and in good health when payment is tendered.

**3. INSURANCE—PROOF OF DEATH—WAIVER.**

Plaintiff, in an action on a policy of insurance, was under no obligations to make out formal proofs of death of her intestate after the insurance company had advised her that they did not recognize the policy as being in force, and had refused payment on that ground.

4. INTEREST—ON INSURANCE POLICY.
In estimating damages in an action on a policy of insurance, interest may be computed on the face of the policy from the time it was payable.

*Geo. D. Reynolds,* for plaintiff.
*Krum & Jonas,* for defendant.

THAYER, J., (*charging jury orally.*) This case lies within a very narrow compass, under the view which the court takes of it, and has taken from the beginning. The suit is on six policies, or, as they are termed, "certificates of membership," issued by the Hartford Life & Annuity Insurance Company to E. J. Unsell. It seems that these policies contemplated payments of three kinds, to be made by the holder of the same.

(1) He was required to pay $10 on each $1,000 of insurance taken out, to make up what is known as a trust or guaranty fund. With that class of payments you have nothing to do, as no charge of a default in such payments has been made.

(2) As losses occurred, the holder of these policies of insurance was required to stand his *pro rata* assessment, to make up a fund to pay such losses. You have nothing whatever to do with that class of payments. For aught that appears, those payments were all duly made.

The policy also required the assured to pay $3 per annum for each thousand dollars of insurance, which went to make up a fund to pay the operating expenses of the company, and those payments were to be made in advance. The policy contemplated that those annual dues, as they are called, should be paid for the full year in advance, or paid monthly in advance, or quarterly in advance, just as the parties might agree. The controversy here is over the payment of those annual dues. One condition of the policies is as follows:

"The holder of this certificate further agrees and accepts the same upon the express condition that if either the monthly dues, assessments, or the payment of the $10 towards the safety fund as hereinbefore required, are not paid to said company on the date due, then this certificate shall be null and void, and of no effect, and no person shall be entitled to damages or the recovery of any moneys paid for protection while the certificate was in force, either from said company or the trustees of the safety fund."

Now, the answer in this case states that the annual dues were all paid up to and including the thirty-first of December, 1885; that the annual dues which matured on the following day—that is, January 1, 1886,—were not paid, and were not paid during that month; and that the assured died on the twenty-eighth of January, 1886; and that, by virtue of the provision of the policy above stated, the policy was null and void, and of no effect when he died.

That is a perfectly good defense to this action, if it is true, and it is conceded by the plaintiff that the dues that matured on January 1, 1886, were not paid. But the plaintiff seeks to escape from the forfeiture of the policy under that condition, by saying that the particular provision of the policy which I have just read to you had been waived by the defendant company, and for that reason the non-payment of the

dues on January 1, 1886, did not work a forfeiture of the policy, and the sole question that you must determine is whether there was or was not such a waiver. There is a rule of law applicable to cases of this kind, and it is, in substance, as follows:

When a policy of life insurance provides that payments of premiums shall be made on a given day or days, and further provides that, in default of the payment of such premium on the day or days specified, the policy shall thereupon become void, or null and void, and the company issuing such policy afterwards pursues a practice of accepting premiums after the time of payment specified in the policy, without insisting upon the forfeiture, then such practice on the part of the company, of receiving premiums which are overdue, operates as a waiver of the right of forfeiture.

This rule rests upon the ground that the company by its conduct, in accepting premiums after they are due, has led the insured to believe that it will not insist on a forfeiture if the premium is not paid on the day that it is due, and that it does not intend to exercise that right, and, for that reason, that it would be unjust, under such circumstances, to insist upon a forfeiture for non-payment of the premiums, after the assured, by the practice of the company, has been lulled into a state of fancied security. It is that rule which the plaintiff invokes to recover on these policies, and she must stand or fall according as she brings her case within that rule.

She has offered in evidence a number of receipts for annual dues under the policies in suit, covering a period from October 10, 1881, down to December 31, 1885. The purpose of this proof is to satisfy you that the defendant received annual dues from the deceased after they were due, on so many occasions, or under such circumstances, as to warrant you in finding, according to rule last stated, that it waived its right to forfeit the policies in suit for the non-payment of annual dues at maturity. These, then, are the questions which you will have to determine: (1) Did the defendant receive annual dues after they fell due? and (2) did the defendant receive annual dues on so many occasions, or under such circumstances, as would fairly warrant the assured in believing that the defendant had abandoned, or did not intend to insist upon, a forfeiture of the policy, even though annual dues were not paid at maturity?

To warrant you in finding that the defendant waived its right of forfeiture for non-payment of dues at maturity, the plaintiff must satisfy you (and the burden is upon her to show) that the defendant received annual dues after maturity on so many occasions, or under such circumstances, as would fairly and reasonably induce the deceased to believe that the company did not intend to insist upon its right of forfeiture, even though the annual dues were not paid at maturity. If the plaintiff has succeeded in satisfying you that such was the case, then you must find in her favor. If she has failed to satisfy you of such fact, then you should find for the defendant.

There is a class of receipts before you, gentlemen, being receipts for dues that were paid apparently after maturity, which cannot, in any view of the case, be regarded in themselves as establishing an absolute

waiver, and you will not so regard them. I refer to a class of receipts which contain a certain condition. I will read you one of the receipts as a sample. It is as follows:

"HARTFORD, CONN., January 12, 1884.

"Received of E. J. Unsell monthly dues on certificates 24,981 to 24,985, five dollars; dues January 1, 1884, to May 1, 1884, in the safety fund department of this company."

This is the clause to which I direct your attention:

"It being understood that the receipt by this company of payments after date due is only on condition that the member is alive, and in good health, at the date of such receipts. [Signed] "STEPHEN BALL, Secretary."

Now, gentlemen, a receipt of that kind, even though it be for dues paid after they were due, (and it purports to be for such dues,) does not tend to show an absolute waiver by the company of its right of forfeiture, and these receipts were not admitted by the court on that theory. Receipts in this form only tend to show that the company would accept payments after due, and after a right of forfeiture had accrued to it, in the event that the member was alive and in good health. They were admitted by the court because I deemed it to be the fairest course to lay all the receipts before you, (those of this form as well as those in other forms,) in order that you might see the whole course of dealing between the parties, with reference to the payment of annual dues, and be the better able to determine intelligently the question of waiver which is hereby submitted to you.

Now, gentlemen, if on the testimony in the case you are of the opinion that the plaintiff has failed to make out a waiver by the company of the right of forfeiture, and you will apply to the determination of that question the principles I have defined, then you will find a verdict for the defendant. If the plaintiff has established such waiver to your satisfaction, then you will find in her favor. If you find in her favor, you will have to assess her damages. It has transpired on the trial that after the death of her husband she communicated with the company, and asked for forms to make out proofs of loss, and was informed that the company did not recognize any liability to her. In estimating the damages in the case, you may compute interest on the face of the policies from a date 90 days after the date of the communication which she received from the company, to the effect that they did not recognize any liability under these policies, as the policies were payable 90 days after the receipt of proofs of loss. Plaintiff was under no obligations to make out formal proofs of death after the company had advised her that they did not recognize the policy as being in force, and had refused payment on that ground.. There are two counts in the petition, and you will have to assess the damages under each separately, and state the damages separately in your verdict.

In my judgment, under the proof in this case, if you find for the plaintiff, she will be entitled to recover $5,000 under the first count, and $5,000 under the second, together with interest, computed in the man-

ner I have directed. There is no evidence in this case to warrant you in imposing 10 per cent. damages as a penalty for a vexatious refusal to pay the policy, and you will not award any such penalty, even though you should be of the opinion the plaintiff is entitled to recover.