# CASES

## ARGUED AND DETERMINED

### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### WILLIAMS et al. v. NEELY et al.*

(Circuit Court of Appeals, Eighth Circuit. November 18, 1904.)

#### No. 2,046.

1. EQUITY—JURISDICTION TO ENJOIN ACTION AT LAW.

Any fact which renders it against conscience to enter or execute a judgment at law, and which was not available to the defendant at law, confers jurisdiction upon a court of equity to enjoin the proposed entry or execution.

2. SAME—PROMISSORY NOTE—EQUITABLE DEFENSE THOUGH NEITHER OFFSET NOR COUNTERCLAIM.

A sound reason, inhering in the same transaction from which a promissory note springs, why the holder ought not, in equity and good conscience, to recover its face value, is a good equitable defense to it, although this defense constitutes neither an offset, a counterclaim, nor an affirmative cause of action against the holder of the note.

3. PROMISSORY NOTE—PURCHASE PRICE—DEFECT OF TITLE.

A partial failure of consideration which results from a defect of title is a good defense pro tanto to an action by the vendor upon a promissory note given for the purchase price of land which the vendor has conveyed with covenants of warranty and against incumbrances.

4. JURISDICTION IN EQUITY—ACTION AT LAW—INJUNCTION.

An injunction should issue to stay an action at law upon a promissory note for the purchase price of land until this equitable defense of reduction is allowed whenever the remedy at law is less certain, prompt, and efficient to attain the ends of justice, either because the interests of the parties require that the title to the land should be perfected, that their rights should be adjudicated, and that the litigation should be closed—a result which no remedy at law is adequate to accomplish—or because it entails circuity of action, or because there is imminent danger of unjustifiable loss or injury to the payee of the note, which a court of equity may, and a court of law cannot, prevent.

5. SAME—WHAT ADEQUATE REMEDY AT LAW IS.

The adequate remedy at law which will deprive a court of equity of jurisdiction must be a remedy as certain, complete, prompt, and efficient to attain the ends of justice as the remedy in equity.

---

* Rehearing denied February 10, 1905.

134 F.—1

6. ASSIGNEE OF CHOSE IN ACTION—DEFENSES AGAINST ASSIGNOR.

The assignee of a chose in action takes it subject to all the defenses which could have been set up against it in the hands of the assignor at the time of the assignment.

[Ed. Note.—For cases in point, see vol. 4, Cent. Dig. Assignments, § 177.]

7. SAME—NOTE OF DEBTOR—DEFENSES AGAINST ASSIGNOR.

One who purchases for value of a creditor the obligation of his debtor, and obtains the latter's promissory note, payable to himself, as evidence of his obligation, with full knowledge of the consideration thereof, and of the facts which condition the inception of the original obligation, takes the note subject to all the defenses which existed against it in the hands of the original creditor.

8. WAIVER—EQUIVALENT OF ESTOPPEL.

The basis of waiver is estoppel, and where there is no estoppel there is no waiver.

9. STATUTE OF LIMITATIONS—DEFENSE OF REDUCTION OR RECOUPMENT SURVIVES AS LONG AS CLAIM SURVIVES.

The defense of reduction or recoupment, which arises out of the same transaction as the promissory note or claim, survives as long as a cause of action upon the promissory note or claim exists, although an affirmative action upon the subject of the defense may be barred by the statute of limitations.

10. EQUITY—LACHES—DEFINITION.

The doctrine of laches is that courts of equity are not bound by, but usually act in analogy to, the statute of limitations governing actions at law of like character.

Under ordinary circumstances a suit in equity will not be stayed for laches before, and will be stayed after, the time fixed by the analogous statute of limitations at law; but if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the statute, the chancellor will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it.

11. SAME—DELAY IN INTERPOSING EQUITABLE DEFENSE—CULPABLE LACHES.

It is not culpable laches for one who has an equitable defense of reduction to a promissory note, which has been and is the subject of pending litigation in another court, and which, if available at law, would survive as long as the cause of action upon the note existed, to wait until an affirmative action at law upon the subject of the defense is barred, and until the equitable defense is rejected in an action at law upon the note, before invoking the aid of a court of equity to enjoin the prosecution of the latter action until his equitable defense is allowed.

12. CO-ORDINATE JURISDICTION—COURT WHICH FIRST ACQUIRES, RETAINS.

The court which first acquires jurisdiction of specific property by the issue and service of process in a suit to enforce a lien upon it, in which it may be necessary to take possession or control of it, retains jurisdiction until the end, free from the interference of any court of co-ordinate jurisdiction.

13. SAME—SUBSEQUENT SUIT SHOULD NOT BE DISMISSED, BUT STAYED.

A subsequent suit involving rights in the same property in a court of co-ordinate jurisdiction should not be dismissed, but, before a seizure of the property under it, should be stayed until the proceedings in the earlier suit are terminated, or ample time for their termination has elapsed.

Hook, Circuit Judge, dissenting.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Nebraska.

This is an appeal from a decree which dismissed a bill in equity exhibited by the complainants below, Joseph A. Williams and Annie Williams, to enjoin

the prosecution of an action at law which the defendant Richard M. Neely had brought against them in the court below to enforce the payment of their promissory note for $3,500, dated March 1, 1893, and due March 1, 1898, and to obtain a decree adjudicating the claims of the defendants in this suit to three quarter sections of land in the state of Nebraska. The material facts disclosed at the final hearing were these: Under the will of Richard S. Malony, Sr., Richard S. Malony, Jr., and Annie H. Neely owned three quarter sections of land, subject to the liens of two legacies which were charged upon the lands by the will—one of $200 per year payable to the defendant Hannah Blake, and one of $100 per year payable to the defendant Sarah Foss. They sold one of these tracts to the defendant Stanley B. Wilson, another to the defendant Wenzel Herdlichtka, and the third to the complainant Joseph A. Williams. Before the sale of the third tract, Richard S. Malony had conveyed his share in it to Annie H. Neely, who made the contract of sale and the deed to the complainants. Each sale was made for $6,000, the full value of a title to each tract free from all incumbrances, and Wilson and Herdlichtka have paid for their quarters in full. The facts and conclusions which have been recited are res adjudicata between the parties to this suit by virtue of a decree of the district court of Richardson county, in the state of Nebraska, in a suit to which they were parties, and that suit is still pending under an order of the Supreme Court of that state to the district court to ascertain the amount owing by the complainant Joseph A. Williams herein on account of the purchase of his tract, to take control thereof, and, in case the law and the facts should be found to justify that course, to apply that amount in payment of the amounts due to the annuitants, Hannah Blake and Sarah Foss.

On February 6, 1902, Annie H. Neely and Richard S. Malony, Jr., as principals, and the defendant Richard M. Neely and others as sureties, executed a bond in the penal sum of $1,000 to the county judge of Richardson county, conditioned, among other things, that they should pay and discharge all legacies chargeable upon the estate of Richard S. Malony, Sr., or such dividends thereon as should be decreed by the county court. The defendant Richard M. Neely was the agent of his mother, Annie H. Neely, to sell the quarter section of land which was purchased by the complainant Joseph A. Williams. In October, 1892, he made and signed a written contract, as the agent of his mother, to sell and convey this land to Williams for $6,000, $500 of which was then paid, and the remainder was to be paid $2,000 on March 1, 1893, and $3,500 on March 1, 1898. About March 1, 1893, in performance of this contract, Williams paid this $2,000, and he and his wife made a note and a mortgage upon the property for $3,500, and Annie H. Neely executed a warranty deed of it to him. These instruments were prepared by Annie H. Neely, or by one of her agents, and the note and mortgage were made payable to Richard M. Neely, but the only consideration for them was the land the complainants purchased. Richard M. Neely never paid them anything for the note or mortgage. What amount, if anything, he paid his mother for them, is left in grave doubt by the evidence, and, in our view of the case, is not material.

On April 18, 1902, Richard M. Neely brought an action at law against the complainants on the note, and they answered the facts which have been recited. The court held at the trial of that action that these facts constituted no defense to the note at law, and this suit was instituted, and the action at law was stayed to abide its determination. The same court has now held that these facts present no reason for relief in equity, and this conclusion is challenged by the appeal.

J. H. Broady, for appellants.

William Baird (John C. Wharton, Edgar A. Baird, and Clair J. Baird, on the brief), for appellees.

Before SANBORN, VAN DEVANTER, and HOOK, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

This is a suit in chancery. The theory upon which counsel for the complainants seeks to maintain it is this: In equity and good conscience, Richard M. Neely ought not to be permitted to recover upon the complainants' note the full amount of the unpaid purchase price of the land which they bought of his mother, Mrs. Annie H. Neely, through him as her agent, but the amount of his recovery should be reduced by the diminution of the value of the title which resulted from the liens upon the land which they bought. The purchase price which the complainants agreed to pay was the full value of a perfect title to the property, free from all incumbrances. The vendor agreed to give them such a title. They have not received it, but have obtained one of much less value, since the incumbrances upon it are about equal to the unpaid purchase price evidenced by their note. Neely, the payee of this note, knew of these incumbrances before he took or paid for the note. He knew that his mother, in performance of her agreement of sale, gave to the complainants a covenant against incumbrances upon the title to the land, and that the note evidenced the unpaid part of the purchase price. He knew—for he cannot escape knowledge of the law—that against his mother, and against all who took the note with knowledge of its consideration and of the facts and circumstances under which it was made, the obligation of the complainants to pay it was conditioned by the faithful performance by the vendor of her obligation to vest in them a title free from incumbrances. She has failed to comply with her agreement, and the complainants invoke the aid of this court to reduce the amount to be paid upon their note by the damages which they must sustain by the failure of the vendor to comply with the conditions subsequent of the complainants' obligation to pay—her contract to furnish them a perfect title free from incumbrances. This theory of counsel for the complainants does not at first blush appear to be irrational, nor does the relief they seek seem to be either unjust or inequitable.

The purpose of the bill is to present and enforce an equitable defense to the action for payment of complainants' note. That defense is not, as counsel for the defendants seem to suppose, either a set-off or a counterclaim. Hence neither an independent cause of action in the defendant to recover damages of the complainant, nor a claim for liquidated damages, is an indispensable element of it. The defense is simply an equitable reason why the amount which the defendant should recover upon his note should be reduced below the amount which appears to be due upon its face. It springs out of and is a part of the same transaction from which the note arises. It is reduction or equitable recoupment, for it is analogous to the defense of recoupment at law. That defense crept from courts of chancery into the practice at law to enable courts of law to avoid the expense of suits in equity, to prevent circuity of action, and to obtain its benefit. Reab v. McAlister, 8 Wend. 109; Nashville Trust Co. v. Fourth National Bank (Tenn.) 18 S. W. 822, 15 L. R. A. 710, 714.

In Wheat v. Dotson, 12 Ark. 699, 711, Mr. Justice Scott, in an exhaustive and learned opinion, shows that recoupment is, in its nature and essence, an equity; that it was derived from the civil law; that it

is now uniformly applied where one brings an action for a breach of a contract, and the defendant can show that some stipulation in the same contract was made by the plaintiff, which he has violated; and that under the modern practice at law a defendant in an action upon any contract to pay the purchase price of land, the title to which was warranted to him, may reduce the recovery by way of recoupment by proof of a partial failure of consideration which has resulted from a diminution in the quantity or quality of the land conveyed, but that a partial defect in the title to the land is inadmissible at law for this purpose, because equity has exclusive and peculiar jurisdiction over the title to real estate, and has the power to perfect it, because, in general, the vendee sustains no injury by a defect of title so long as he retains the possession and use of the land, and because courts of law lack the peculiar jurisdiction to cause defective titles to be perfected, and are unable to do final and complete justice between the parties, and to terminate all possible litigation over the controversy.

Recoupment is the keeping back of something that is due because there is an equitable reason for holding it. Ives v. Van Epps, 22 Wend. 155, 156. As the defense in this suit is not based upon a set-off or a counterclaim, but upon an equitable reason, inhering in the transaction out of which the note springs, why the claim of Neely ought, in equity and good conscience, to be reduced, and as it presents no affirmative cause of action for a recovery against Neely, the authorities cited by his counsel relative to the essential attributes of set-offs and counterclaims (Simpson v. Jennings, 15 Neb. 671, 19 N. W. 473; Spencer v. Johnson, 58 Neb. 44, 78 N. W. 482; Fuller v. Steiglitz, 27 Ohio St. 355, 22 Am. Rep. 312; Frick v. White, 57 N. Y. 103; Graham v. Tilford, 1 Metc. [Ky.] 112; Brashear v. West, 7 Pet. 608, 616, 8 L. Ed. 801; and Computing Scale Co. v. Churchill, 109 Wis. 303, 85 N. W. 337) have no relevancy to the issues presented in this case, and they will not be farther noticed.

Bearing in mind the nature of this suit, and the ground of the equitable defense it seeks to present, let us consider the questions which condition its maintenance.

In an action by the vendor upon a promissory note for the unpaid purchase price of real estate which he has conveyed to the vendee by a deed with covenants of warranty and against incumbrances, the latter may reduce the amount of the recovery by proof of a partial failure of consideration which has resulted from a defect of title. 3 Sedgwick on Damages, § 1053; Sutherland on Damages, § 641; Davis v. Bean, 114 Mass. 358; Schuchmann v. Knoebel, Ex'r, 27 Ill. 175; Jaques v. Esler, 4 N. J. Eq. 461, 462; Union Nat. Bank v. Pinner, 25 N. J. Eq. 495; White v. Stretch, 22 N. J. Eq. 76, 80; Johnson v. Gere, 2 Johns. Ch. 546; Walker v. Wilson, 13 Wis. 522; Wilson v. Cochran, 46 Pa. 229, 231; Clarke v. Hardgrove, 7 Grat. 399, 407; Scantlin v. Allison, 12 Kan. 85; Cross v. Noble, 67 Pa. 74, 78; Beecher v. Baldwin, 55 Conn. 419, 431, 12 Atl. 401, 3 Am. St. Rep. 57; Avery v. Brown, 31 Conn. 398, 402; Coy, Adm'x, v. Downie, 14 Fla. 544, 562; Lowry v. Hurd, 7 Minn. 356 (Gil. 282, 285); Wamsley v. Hunter, 29 La. Ann. 628, 629; Youngman v. Linn, 52 Pa. 413, 416; Crenshaw v. Smith, 5 Munf.

415, 417. The reason for this rule is that the covenants in the deed and the promise in the note are mutual covenants, and the performance of each is the consideration of and the condition of the obligor's promise to perform the other. This is an evident proposition so long as the contract of sale is executory, and the covenant to vest good title and the promise to pay the purchase price are embodied in a single written instrument, which is signed by both the parties. Partial failure of the plaintiff to perform is always a good defense pro tanto to an action for damages for the defendant's failure to keep his agreement, or to a suit to enforce its specific performance. The reason for the rule, and its appropriate application to a covenant against incumbrances and a promissory note for the purchase price, would be equally obvious if these mutual covenants which accompany the transfer of title were embodied in a single written agreement which was signed by the parties. A moment's reflection will, however, convince that it can make no difference in the rights of the parties to the sale, or in the legal effect of the transaction, that the covenant of the vendor is in one writing, and the promise of the vendee is in another. The performance of the one is still the consideration and the condition subsequent of the other, and a partial failure to perform one ought to be and is still a defense pro tanto to an action or a suit upon the other. Hence it is that in Davis v. Bean, 114 Mass. 358; Schuchmann v. Knoebel, Ex'r, 27 Ill. 175; Jaques v. Esler, 4 N. J. Eq. 461, 462; Union Bank v. Pinner, 25 N. J. Eq. 495; White v. Stretch, 22 N. J. Eq. 76, 80; and Wilson v. Cochran, 46 Pa. 229, 231—the courts held, in actions by vendors upon promissory notes for portions of the purchase price of land which the vendors had conveyed to the defendants with covenants against incumbrances, that the vendees might reduce the amounts of the recoveries by the amounts of the incumbrances upon the titles. And on the other hand, in Beecher v. Baldwin, 55 Conn. 419, 12 Atl. 401, 3 Am. St. Rep. 57, the Supreme Court of Connecticut decided that, in an action by a vendee upon a covenant against incumbrances, his recovery could be reduced by the amount of his unpaid notes for a part of the purchase price.

Upon a breach of a covenant of warranty or of a covenant against incumbrances, the obligee has a choice of remedies. He may pay the purchase price and bring his action on the covenant, or he may reduce the vendor's recovery for the purchase price by the amount of the diminution of the value of the title on account of the defect in it. He may do this upon the ground that his obligation to pay the price was subject to the condition that the vendor would perform his obligation to furnish a title free from incumbrances, and that he has violated that condition, and upon the further ground that the performance of that condition was a part of the consideration of his agreement. Lyon v. Bertram, 20 How. 149, 154, 15 L. Ed. 847; Dorr v. Fisher, 1 Cush. 271, 273, 274. The general rule upon this subject is stated in these words by the Supreme Court in Winder v. Caldwell, 14 How. 434, 443, 14 L. Ed. 487—an action on a building contract; to which the defense of delay, poor materials, and poor workmanship was interposed:

"For, although it is true, as a general rule, that unliquidated damages cannot be the subject of set-off, yet it is well settled that a total or partial failure of consideration, acts of nonfeasance or misfeasance, immediately connected with the cause of action, or any equitable defense arising out of the same transaction, may be given in evidence in mitigation of damages or recouped, not strictly by the way of defalcation or set-off, but for the purpose of defeating the plaintiff's action, in whole or in part, and to avoid circuity of action."

Withers v. Greene, 9 How. 214, 13 L. Ed. 109; Van Buren v. Digges, 11 How. 461, 13 L. Ed. 771.

The application of this rule to an action on a note or bond for the purchase price of land, in which the defense of a breach of a covenant through a defect of title is interposed, is perhaps nowhere better shown than by the Supreme Court of Pennsylvania (a state under whose system of jurisprudence legal and equitable rights are enforced in the same action) in Wilson v. Cochran, 46 Pa. 229, 231 (an action on bonds for the purchase price of land, in which the defendant, who held a warranty deed, was permitted to reduce the recovery by the diminution in the value of the title which resulted from the incumbrance of a right of way, of which both parties had constructive notice from the records at the time of the sale). That court said:

"The detention of purchase money on account of breaches of the vendor's covenant is a mode of defense that is peculiar to our Pennsylvania jurisprudence, but the principle is well settled with us that, where a vendor has conveyed with covenants on which he would be liable to the vendee in damages for a defect of title, the vendee may detain purchase money, to the extent to which he would be entitled to recover damages upon the covenant, and he is not obliged to restore possession to his vendor before or at the time of availing himself of such a defense. Where there is a known defect, but no covenant or fraud, the vendee can avail himself of nothing; being presumed to have been compensated for the risk in the collateral advantages of the bargain. But where there is a covenant against a known defect, he shall not detain purchase money unless the covenant has been broken. If the covenant be for seisin or against incumbrances, it is broken as soon as made, if a defect of title or an incumbrance exist; but, if it be a covenant of warranty, it binds the grantor to defend the possession against every claimant of it by right, and is consequently a covenant against rightful eviction."

The broken covenant in the case in hand is a covenant against incumbrances, and it was broken as soon as it was made.

The later case of Cross v. Noble, 67 Pa. 74, 78, demonstrates the fact that it was not the intention of the Pennsylvania court in the case last cited to hold that the defense of a partial failure of consideration arising from a defect of title is not available in the absence of a covenant, for Mr. Justice Sharswood there says:

"Mr. Justice Kennedy, in Roland v. Miller, 3 Watts & S. 390, has stated the rule as it has always been understood and acted upon in this state: 'The doctrine of Steinhauer v. Witman [1 Serg. & R. 438] is that, if the consideration money has not been paid, the purchaser, unless it plainly appear that he has agreed to run the risk of the title, may defend himself in an action for the purchase money by showing that the title was defective, either in whole or in part, whether there was a covenant of general warranty or of right to convey or of quiet enjoyment by the vendor, or not, and whether the vendor has executed a deed of conveyance for the premises, or not.' Lloyd v. Farrell, 48 Pa. 73, 86 Am. Dec. 563; Weakland v. Hoffman, 50 Pa. 513, 88 Am. Dec. 560;

Herrod v. Blackburn, 56 Pa. 103, 94 Am. Dec. 49; Dankel v. Hunter, 61 Pa. 382, 100 Am. Dec. 651."

Grand Lodge of Masons v. Knox, 20 Mo. 433; Ives v. Van Epps, 22 Wend. 155; McAllister v. Reab, 4 Wend. 485.

These authorities perhaps sufficiently illustrate the general rule that a partial failure of consideration wrought by a defect of title is a good defense pro tanto to an action upon a promissory note for the purchase price of land conveyed by a warranty deed.

The next question for consideration is, when is this defense available at law, and when in equity? There is much diversity of opinion in the courts of the states upon the question when a partial defect of title is available to reduce a recovery in an action at law for the purchase price. A review of many of the decisions upon this subject may be found in 2 Sutherland on Damages, §§ 632–641. Naturally the use of the equitable remedy of an injunction against the prosecution of an action at law for the purchase price varies in the different states with the different rules which they have adopted for the admission of this defense at law. But the power to protect purchasers is more ample and is more freely exercised in courts of equity than in courts of law, and, where the remedy at law is not clearly adequate, their jurisdiction is never invoked in vain. The Supreme Court has repeatedly declared that:

"A court of chancery regards the transfer of real property in a contract of sale and the payment of the price as correlative obligations. The one is the consideration for the other, and the one failing leaves the other without a cause." Refeld v. Woodfolk, 22 How. 318, 327, 16 L. Ed. 370; Slide & Spur Gold Mines v. Seymour, 153 U. S. 509, 517, 14 Sup. Ct. 842, 38 L. Ed. 802.

And the general rule upon this subject may be safely stated in these words: A court of equity should issue an injunction to stay an action at law upon a promissory note for the purchase price until the defense of reduction arising out of the same transaction is allowed whenever the remedy at law is less certain, prompt, and efficient to attain the ends of justice, either because the interests of the parties require that the title to the land should be perfected, that their rights should be adjudicated, and that the litigation over it should be closed—a result which no remedy at law is adequate to accomplish—or because it entails circuity of action, or because there is serious danger of unjustifiable loss or injury to the vendee, which a court of equity may, but a court of law cannot, prevent. Jaques v. Esler, 4 N. J. Eq. 461, 462; Johnson v. Gere, 2 Johns. Ch. 546; Koger v. Kane's Adm'r, 5 Leigh, 606, 607; Clarke v. Hardgrove, 7 Grat. 399, 407; Union Nat. Bank v. Pinner, 25 N. J. Eq. 495; White v. Stretch, 22 N. J. Eq. 76; Coy, Adm'r, v. Dowie, 14 Fla. 544; Walker v. Wilson, 13 Wis. 522. The case at bar falls well within this rule. The liens of the annuities have been fastened upon the land of the complainants by the decree of the state court, and they cannot escape their payment. A court of law has not the power to determine their amounts, to require their present payment and release, or to perfect the title to the land, in the action for the purchase price, or in an action on the covenant against incumbrances, because that court cannot grant relief of that nature. On

the other hand, a court of equity has plenary jurisdiction to render a decree in this suit which will determine the amounts of the liens and the parties who must pay them, which will perfect the title to the land, and put an end to the litigation concerning it. Moreover, if, as counsel for Richard M. Neely contend, the action upon the covenant against Annie M. Neely is barred by the statute of limitations, the complainants have no remedy at law by an action upon that covenant; and, if it is not barred, she is not a resident of the state of Nebraska, and an action at law in another jurisdiction is not as prompt and efficient a remedy as a suit in equity to determine the rights of the parties in the jurisdiction which Neely has invoked. Rolling Mill Co. v. Ore & Steel Co., 152 U. S. 596, 617, 14 Sup. Ct. 710, 38 L. Ed. 565; Quick v. Lemon, 105 Ill. 578; Taylor v. Stowell, 4 Metc. (Ky.) 175; Forbes v. Cooper, 88 Ky. 285, 11 S. W. 24; Robbins v. Holley, 1 T. B. Mon. 191; Edminson v. Baxter, 4 Hayw. (Tenn.) 112, 9 Am. Dec. 751; Davis v. Milburn, 3 Iowa, 163; Green v. Campbell, 55 N. C. 446.

The cases presented in opposition to this conclusion do not rule the issue which this case presents. A class of authorities is cited to the effect that a partial or total failure of the title conveyed by a warranty deed presents no defense in equity to the payment of the purchase price, unless the vendee has been evicted from, or has surrendered possession of, the land, because until that time there is no breach of the covenant against rightful claims for title and possession. Patton v. Taylor, 7 How. 133, 159, 12 L. Ed. 637; Elliott v. Thompson, 4 Humph. (Tenn.) 99, 40 Am. Dec. 630; Buchanan v. Alwell, 8 Humph. 516, 518; Wimberg v. Schwegeman, 97 Ind. 529, 530; Wilkins v. Hogue, 55 N. C. 479, 481; Vick v. Percy, 7 Smedes & M. 256, 45 Am. Dec. 303. These decisions seem to adopt the ancient rule of the common law that a partial failure of consideration is no defense to a promissory note. That rule has long since been abolished both at law and in equity, and an application of the modern rule evidenced by the decisions cited in the earlier part of this opinion leads logically to a different conclusion from that announced in these opinions. If, however, we concede their correctness, they go no farther than to hold that until the covenant against rightful claims to the title and possession, which was under consideration in those cases, is completely broken, and all the possible damage from the breach has accrued, equity will grant no relief. The relief sought in those cases was denied because the covenant against lawful claims to title and possession was not broken, and the damage from it had not accrued, so long as the vendee enjoyed the undisturbed possession and use of the land, and because an action upon that covenant, when broken, would furnish a complete remedy to the vendee. The facts of this case do not bring it within this rule. The covenant in question here is not the covenant against rightful claims to title and possession, but the covenant against incumbrances. That covenant was broken when it was made. The decree of the state court judicially established the paramount liens of the incumbrances. It judicially determined that the breach of the covenant against them, and the damages

therefrom, had arisen when the covenant was made. It as effectually demonstrated the complete breach of the covenant against incumbrances at the time it was made as a judgment at law, and eviction thereunder, would have established a breach of the covenant against rightful claims to the title and possession. Boyd v. Bartlett, 36 Vt. 9, 15; Turner v. Goodrich, 26 Vt. 707. In this way the complete breach of the covenant against incumbrances is established by the record before us, and an action upon it will furnish the complainants no adequate remedy, because it will not settle the claims to, or perfect the title to, the land, because it is probably barred by the statute, and, if it is not, it presents a more dilatory, circuitous, and doubtful remedy than the pending suit.

The cases of Miller v. Avery, 2 Barb. Ch. 582, Senter v. Hill, 5 Sneed (Tenn.) 505, and Gayle v. Fattle, 14 Md. 69, cited for Neely, rest upon the conceded proposition that averment or proof of an adverse action by a third party, without allegation or evidence that it is founded on a superior lien or title, is insufficient to invoke the aid of a court of equity. Nor does the decision in Refeld v. Woodfolk, 22 How. 318, 327, 16 L. Ed. 370, that a vendee who has completed the payment of the purchase price is not entitled to a decree that the vendor shall perfect the title, have any relevancy to the question under consideration in the case at bar. The equity of a vendee who has voluntarily paid the purchase price differs radically from that of one who resists its payment. There is no opinion of any court in these authorities cited for Neely inconsistent with the view that a court of equity has jurisdiction to grant the relief which the complainants in this case seek. In Davis v. Wakelee, 156 U. S. 680, 688, 15 Sup. Ct. 555, 39 L. Ed. 578, we find these words:

"It is a settled principle of equity jurisprudence that, if the remedy at law be doubtful, a court of equity will not decline cognizance of the suit. * * * Where equity can give relief, plaintiff ought not to be compelled to speculate upon the chance of his obtaining relief at law."

The adequate remedy at law which will deprive a court of equity of jurisdiction is a remedy as certain, complete, prompt, and efficient to attain the ends of justice as the remedy in equity. Boyce v. Grundy, 3 Pet. 210, 215, 7 L. Ed. 655; Springfield Milling Co. v. Barnard & Leas Mfg. Co., 81 Fed. 261, 265, 26 C. C. A. 389, 393; Brown v. Arnold (C. C. A.) 131 Fed. 723. The complainants have no such remedy at law. A court of equity alone has the power to grant them adequate relief, and its jurisdiction of this suit is complete.

But counsel for Richard M. Neely insist that, while an assignee of a chose in action takes it subject to all the defenses that could at the time of the assignment be presented against it in the hands of the assignor, yet he is exempt from these defenses because he is the payee of the note. They say that the complainants waived the defense which they now present by signing the note payable to Neely. But the essence of waiver is estoppel. Where there is no estoppel, there is no waiver. Insurance Co. v. Wolff, 95 U. S. 326, 332, 24 L. Ed. 387; Assurance Co. v. Building Ass'n, 183 U. S. 308,

357, 22 Sup. Ct. 133, 46 L. Ed. 213; Society v. McElroy, 28 C. C. A. 365, 372, 83 Fed. 631, 640; Rice v. Fidelity & Deposit Co., 103 Fed. 427, 435, 43 C. C. A. 270, 278; Insurance Co. v. Thomas, 82 Fed. 406, 408, 27 C. C. A. 42, 45, 47 L. R. A. 450; Unsell v. Ins. Co. (C. C.) 32 Fed. 443, 445; Warren v. Crane, 50 Mich. 300, 301, 15 N. W. 465. The indispensable elements of an estoppel are ignorance of the party who invokes the estoppel, a representation by the party estopped which misleads, and an innocent and deleterious change of position in reliance upon that representation. There were none of these elements in the case at bar. Neely was not ignorant. He knew that the covenant of his mother against incumbrances and the covenant of the complainants to pay the note were mutual covenants, that each was a part of the consideration of the other, and that the violation of one was a defense to the other. He knew that the covenant against incumbrances was broken when he took the note, for these incumbrances rested upon the title to the land, and he must have known the law. The complainants made no misrepresentations. They did not declare that the note was good and that they would pay it, as did the defendant in Thompson v. Emery, 27 N. H. 269, cited by counsel for Neely. Neely never loaned to the complainants or paid to them any consideration whatever for the note. Conceding that he paid to his mother its full value, he was but her assignee of the complainants' obligation to pay the purchase price of the land, with full knowledge of all the equities between the original parties to the sale, and he took the note which evidenced that obligation subject to every defense which could have been asserted against it in the hands of the vendor. The legal presumption is that the payee of a promissory note knows its consideration and the facts which condition its execution. The fact that Neely was the payee here, and not the indorsee, instead of strengthening his position, adds this legal presumption to the conclusive proof of his actual knowledge which the record presents. One who buys of a creditor, for value, the obligation of his debtor, and takes the latter's promissory note, payable to himself, as evidence thereof, with full knowledge of its consideration and of the facts which conditioned the inception of the original obligation, takes the note subject to all the defenses which existed against the claim in the hands of the original creditor. Vorce v. Rosenbery, 12 Neb. 448, 451, 11 N. W. 879; Chariton Plow Co. v. Davidson, 16 Neb. 374, 377, 20 N. W. 256; Camp v. Sturdevant, 16 Neb. 693, 698, 21 N. W. 449; Knapp v. Lee, 3 Pick. 452, 460.

The authorities cited by counsel for Neely in opposition to this conclusion are not relevant to the facts of this case, and they fail to convince. Sadler v. White, 14 La. Ann. 177, 178, was a case in which the purchaser, who was not the payee of the note, which was given by a tenant for rent, was aware when he bought it that defenses to it might arise, although none had then arisen. The court held that this notice was not sufficient to subject him to a defense of partial failure of consideration which subsequently resulted from the ouster of the tenant by a paramount title before his term had expired. The court, however, remarked that the result would

have been different if the defense had existed and the purchaser had been aware of it when he bought the note. In the case at bar the covenant against incumbrances was broken, the defense to the note existed, and Neely knew it when he purchased the note. In Glascock v. Rand, 14 Mo. 550, and Van Buskirk v. Day, 32 Ill. 260, 267, 268, all that is said upon this question is obiter dictum, and it goes no farther than to express a supposition and a doubt. The only question decided in the former case was that an affidavit for continuance did not disclose diligence to procure testimony, and the only issue determined in the latter case was decided by the jury, which found that there was no fraud in procuring the note, and hence no defense to it in the hands of any one. In Steadwell v. Morris, 61 Ga. 97, a husband gave to his wife the note of his partners in payment of a debt which he owed to her. She accepted it without notice that it was founded in a mistake in the accounting between the partners, and the court held that this mistake would not defeat an action on the note in her behalf. It is evident from the opinion, however, that if she had obtained actual knowledge of the defense to the note before she received it, as Neely did in the case at bar, she would not have been permitted to recover. In Thompson v. Emery, 27 N. H. 269, Simpson, the plaintiff in interest, took the note of the defendant as collateral security to the obligation of another. Before or when he obtained it he asked the defendant if it was good, and he replied that it was, and that he would pay it. Simpson knew of no defense to it, and there was none. When action upon it was brought, no defense was interposed, except that the note was not properly indorsed to Simpson. Of course, the plaintiff recovered. There is nothing in these cases in conflict with our conclusion that Richard M. Neely, the payee of the note, who had knowledge when he obtained it of its consideration, and of all the facts which conditioned the obligation which it evidenced, took it subject to every defense which could have been urged against the obligation to pay the purchase price of the land in the hands of the vendor. He stood in the shoes of his mother.

There is another defense to this note, to the extent of $1,000, available to the complainants. It is that Richard M. Neely, as surety for Annie H. Neely, executed the bond to pay the legacies which constitute the incumbrances upon the title to this land. That bond is an obligation which he has never discharged, and which, in equity and good conscience, he ought to fulfill—an obligation which a court of equity may and should permit the complainants to set off against the amount owing upon their note. But as their defense to the full amount of the damage which they have sustained from the incumbrances upon their title is complete by way of equitable recoupment, it is unnecessary and would be useless to consider farther the defense pro tanto by way of the bond.

The next contention is that the defense to the note by way of equitable reduction is unavailable to the complainants because the cause of action upon the covenant against incumbrances is barred by the statute of limitations. Conceding, without deciding, that the bar of the stat-

ute had fallen upon the action on this covenant before this suit was instituted, that fact is not fatal to the defense of the complainants, nor to this suit to enforce it. That defense, as we have seen, is not set-off or counterclaim, but an equitable reason why the amount payable by the terms of the note should be reduced. It is reduction. It is that because the consideration of the note failed in part, and because the condition subsequent that the covenant against incumbrances should be kept was not fulfilled, the full amount of the note ought not to be paid. This defense attaches to and inheres in the note itself, and, while the cause of action upon that obligation survives, the defense lives and runs with it. The defense of reduction or recoupment which arises out of the same transaction as the note or claim survives as long as the cause of action upon the note or claim exists, although an affirmative action upon the subject of it may be barred by the statute of limitations. Ord v. Ruspini, 2 Esp. 569; Beecher v. Baldwin, 55 Conn. 419, 432, 12 Atl. 401, 3 Am. St. Rep. 57; Aultman & Co. v. Torrey, 55 Minn. 492, 57 N. W. 211; Wood on Limitations (3d Ed.) § 282; Conner v. Smith, 88 Ala. 300, 7 South. 150; 25 Am. & Eng. Enc. of Law, p. 561, par. 9.

Finally it is insisted that the complainants have been guilty of such laches that they are entitled to no relief. In the application of the doctrine of laches the settled rule is that courts of equity are not bound by, but that they usually act or refuse to act in analogy to, the statute of limitations relating to actions at law of like character. Rugan v. Sabin, 3 C. C. A. 578, 582, 53 Fed. 415, 420; Billings v. Smelting Co., 2 C. C. A. 252, 262, 263, 51 Fed. 338, 349; Bogan v. Mortgage Co., 11 C. C. A. 128, 135, 63 Fed. 192, 199; Kinne v. Webb, 4 C. C. A. 170, 177, 54 Fed. 34, 40; Scheftel v. Hays, 7 C. C. A. 308, 312, 58 Fed. 457, 460; Wagner v. Baird, 7 How. 234, 258, 12 L. Ed. 681; Godden v. Kimmell, 99 U. S. 201, 210, 25 L. Ed. 431; Wood v. Carpenter, 101 U. S. 135, 139, 25 L. Ed. 807. The meaning of this rule is that, under ordinary circumstances, a suit in equity will not be stayed for laches before, and will be stayed after, the time fixed by the analogous statute of limitations at law; but if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the statute, the chancellor will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it. Kelley v. Boettcher, 29 C. C. A. 14, 21, 85 Fed. 55, 62. This defense of equitable recoupment or reduction, if it were available at law, would have survived as long as the cause of action upon the note was available. If the holder of the note had invoked the aid of a court of equity to foreclose the mortgage which secured it, this defense would have conditioned his recovery there. Farmers' Loan & Trust Co. v. Denver, etc., R. Co., 60 C. C. A. 588, 593, 126 Fed. 46, 51. By analogy with these rules, the complainants are not guilty of culpable laches in enforcing their defense as long as the action on the note survives. Indeed, they were not fairly chargeable with any laches as long as no action upon the note was commenced, because they might well rest in the belief that no action would be taken by Neely to collect it until his bond and the covenant of the

vendor had been fulfilled, and the incumbrances upon the title and the defense to the note had been alike removed. Moreover, there are unusual conditions and extraordinary circumstances in this case which would appeal with compelling force to the conscience of a chancellor to allow the prosecution of this suit, even if the analogous limitation at law had expired. The complainants have long been involved in a tedious litigation in the courts of the state of Nebraska, where they doubtless hoped and expected that the rights of all the parties to this controversy would be judicially determined. That litigation alone furnishes ample excuse for their failure to invoke earlier the aid of other courts. The fact that they interposed their defense in the action at law upon the note, and pressed it until it was disallowed there, is not evidence of fatal laches, but rather of reasonable diligence. The facts that the same judge presided at law and in equity in the court below, and that his decision must determine in the first instance the somewhat vexed question whether their defense should be made at law or in equity, relieve their action below of any just criticism, or of any legitimate charge of unreasonable delay.

It is not culpable laches for one who has an equitable defense of reduction to a promissory note, which has become the subject of pending litigation in another court, and which, if available at law, would survive as long as the cause upon the note, to wait until an affirmative action at law upon the subject of the defense is barred, and until his defense is overruled in an action at law upon the note, before he invokes the aid of a court of equity to enjoin the prosecution of the latter action until his defense is allowed.

The result is that the court below has tried the action at law, and is about to enter a judgment against the complainants for the full amount of their note—an amount which, in equity and good conscience, they ought not to pay. The power was vested in the court of equity below, and the duty was imposed upon it, to enjoin the prosecution of this action at law until the amount of damages which the complainants have suffered from the incumbrances upon their title can be ascertained and applied in reduction of the recovery there sought, and to adjudicate the claims to the land in question and close this litigation, and in that way to prevent a rank injustice which the court at law was powerless to avoid. Any fact which renders it against conscience to enter or execute a judgment at law, and which was not available to the defendant in a court of law, confers jurisdiction upon a court of equity to enjoin the proposed entry or execution of the judgment. Marine Ins. Co. v. Hodgson, 7 Cranch, 332, 336, 3 L. Ed. 362; National Surety Co. v. State Bank of Humboldt, 120 Fed. 593, 56 C. C. A. 657, 61 L. R. A. 394.

The court below, sitting in equity, may and it should proceed to ascertain the present values of the annuities which constitute the incumbrances upon the title of the complainants, and to require the annuitants, upon the payment of those values, to release the three quarter sections of land from those liens, and to perfect the title thereto. In case it shall appear, as counsel have intimated, that since the final hearing below the complainants have paid and

secured releases of these liens, the court should reduce the amount of the recovery in the action at law upon the note by the amount, not exceeding the value of the annuities at the time such payments were made, which the complainants have necessarily expended in paying the liens of the annuities upon their land and in defending their title against them. That court undoubtedly has jurisdiction to adjudicate the rights and interests of all the parties to this suit in the three quarter sections of land to which the liens attach, and to put an end to this litigation.

The only question determined by the court below, and which this appeal was taken to review, was, were the complainants entitled to any relief? The Circuit Court answered that question in the negative. It has now been answered in the affirmative. Issues of law and fact may arise in view of this decision which are not fairly presented by this record, and which have not received the attention of court or counsel. It is unwise and inopportune to suggest or discuss them now.

There is, however, one other question which must not be overlooked. The district court of Richardson county, in the state of Nebraska, acquired jurisdiction of the real estate in controversy in this suit long before either the action at law or the suit in equity in the Circuit Court was instituted. The suit in the state court was commenced by the annuitants for the purpose of subjecting the three quarter sections of land to the payment of their annuities, and they obtained a decree that the liens of their legacies were paramount to the titles of the purchasers from the residuary legatees of Malony, and that the land should be sold to pay them. This portion of the decree was affirmed by the Supreme Court of the state, and it remains unassailed and unmodified. That suit, however, is still pending under an instruction from the Supreme Court to the court below to determine whether or not the complainant Joseph A. Williams may lawfully be required to pay the amount owing upon his note to Neely to the complainants in that suit. The court which first acquires jurisdiction of specific property by the issue and service of process in a suit to enforce a lien upon it, where in the subsequent proceedings it may find it necessary or convenient to take possession or control of it, is entitled to retain that jurisdiction to the end, without interference by any court of co-ordinate power. Gates v. Bucki, 53 Fed. 961, 969, 4 C. C. A. 116, 128, 129; Memphis Savings Bank v. Houchens, 115 Fed. 96, 110, 52 C. C. A. 176, 190, 191. Where a subsequent suit involving the rights of the parties to the same property is commenced in a court of co-ordinate jurisdiction, that suit should not be dismissed, but, before a seizure of the property is made therein, it should be stayed until the proceedings in the court which first obtained jurisdiction are concluded, or ample time for their termination has elapsed. Zimmerman v. So Relle, 25 C. C. A. 518, 521, 80 Fed. 417, 420.

The decree below is reversed, and the case is remanded to the Circuit Court, with directions to enjoin or stay the farther prosecution of the action at law upon the promissory note signed by the

complainants until the amount of the reduction to which the complainants are equitably entitled shall be ascertained and allowed, to permit the parties to file a supplemental bill and answers presenting material events which have occurred since the former hearing, and to take farther testimony, and, when this shall have been done, to take further proceedings in accordance with the views expressed in this opinion.

HOOK, Circuit Judge (dissenting). The facts in this case—some admitted, and the others established by the overwhelming weight of the evidence—are as follows: Through the will of her father and a deed from a co-devisee, Annie H. Neely became the owner of a tract of land, subject to a mortgage given by the testator in his lifetime, and to two annuities which he bequeathed. The mortgage was the prior lien. Mrs. Neely was an executrix of the will. Richard M. Neely, an appellee herein, is her son. Acting as the agent of his mother, he made a contract with Williams for the sale of the land for $6,000, $500 of which was paid at the time, $2,000 was to be paid when the sale was consummated, and the remaining $3,500 was to be evidenced by a note secured by a mortgage upon the property. There is no pretense that he practiced any deception upon Williams; that he made any covenant against incumbrances, or personally obligated himself in any way or to any degree whatsoever. He was professedly acting for his mother in the making of the contract of sale and Williams so understood it. The existence of the mortgage and the annuities were equally apparent from the public records. The contract of sale was susceptible of exact performance. It could have been fully carried out, and all of the liens against the land could have been discharged. Between four and five months afterwards the sale was consummated. Williams received a deed from Mrs. Neely containing covenants of warranty and against incumbrances. He paid the $2,000, and executed his note and mortgage for the remaining $3,500. But Richard M. Neely was not present at the time. He prepared none of the instruments, and did not in any manner participate in the closing of the transaction. For some reason not disclosed in the record Williams did not require the release or satisfaction of the annuities when he took the deed, paid the money, and gave his note and mortgage. Whether this arose from mistake of fact or of law does not clearly appear, but there is not even the slightest ground for attributing it to Richard M. Neely. He was not there, and was wholly innocent in fact and intent. The note and mortgage for the balance of the purchase price were made by Williams direct to Richard M. Neely, instead of to his mother, for the reason that he paid to her and for her benefit the full sum of $3,500 for such securities. Nearly $2,500 of this amount was applied by Mrs. Neely's agent, who attended to the consummation of the sale, towards the discharge of the old mortgage which it is conceded was a first lien on the property. There is no reasonable doubt that the full value of the new securities was paid from the funds of Richard M. Neely to his mother, or for her benefit, in the clearing of

the title to the property, and the record shows that counsel for Williams assisted materially in proving this fact. The sources from whence the money was obtained were fully and conclusively shown. Williams knew that his note and mortgage were not made to Mrs. Neely, the vendor, but were made to the absent Richard M. Neely. And now, many years after the consummation of the transaction, when Richard M. Neely seeks payment of that which he bought and paid for innocently and in good faith, there is set up against his demand a breach of the covenant against incumbrances arising from the existence of the lien of the annuities. The majority of the court hold in the foregoing opinion that this may be done, but I am unable to bring myself to the conclusion that any just application of legal or equitable principles can accomplish that result.

In Glascock v. Rand, 14 Mo. 550, it was held:

"If a purchaser of land executes a negotiable note for the purchase money to an apparent stranger to the title, and fails to secure himself by a proper penal covenant, he has no one to blame but himself, and cannot set up as a defense to the note the failure of the parties in interest to execute proper conveyances to him."

In Cagle v. Lane, 49 Ark. 465, 5 S. W. 790, a similar rule was announced. Cagle purchased from Cummings an interest in a patent right, for which he was to give his note. At Cummings' direction, Cagle made the note direct to Lane, the plaintiff, who paid Cummings a consideration therefor. The patented invention proved to be worthless, and Cagle refused to pay the note; claiming inter alia a failure of consideration, and that the plaintiff was not a bona fide purchaser. The court held that the transaction was the same in substance as if the note had been drawn in favor of Cummings, and by him indorsed to the plaintiff, and that the defense was not maintainable.

In Iron Co. v. Brown, 63 Me. 139, the court said:

"Where, at the request of the party with whom he deals, one makes his promissory note, which is to be a partial payment for a piece of work to be done for him, payable to a third party, who is a creditor of the party with whom he contracts for the work, and it is credited by the payee to such party in good faith, the maker cannot set up a failure of consideration, as between himself and the party with whom he deals, in defense of a suit upon such note in the name of the payee."

The English rule is the same. Munroe v. Bordier, 8 C. B. 862, 65 E. C. L. 861; Porier v. Morris, 2 El. & Bl. 89, 75 E. C. L. 88.

Moreover, it is common doctrine, no longer open to debate, that knowledge of the conditions surrounding the consideration of a promissory note, without knowledge of a breach, will not affect the rights of a purchaser. Miller v. Ottaway, 81 Mich. 196, 45 N. W. 665, 8 L. R. A. 428, 21 Am. St. Rep. 513; Rublee v. Davis, 33 Neb. 779, 51 N. W. 135, 29 Am. St. Rep. 509.

In United States Nat. Bank v. Floss, 38 Or. 68, 62 Pac. 751, 84 Am. St. Rep. 752, it was held that knowledge in the purchaser of a note that it was given in consideration of a good title to land, does not affect his right to recover, in case of a breach of the contract to convey, unless he knew the breach had already occurred.

In Parsons on Notes & Bills it is said that knowledge on the part of the holder at the time he took the note that it was not to be paid on a specified contingency is not sufficient to defeat his right to recover, although the contingency had then happened, if he was ignorant of the fact.   Volume 1, p. 261.

In Tiedeman on Commercial Paper it is said:

"The authorities generally hold that the purchaser of commercial paper is not burdened with the requirement to see to the execution and full performance of the consideration merely because he knows what it is."   Section 300.

Under the settled rule of the Supreme Court, a much stronger case could be assumed against Richard M. Neely than the record justifies, and yet not impair his right to recover from Williams. That rule is that bad faith alone will defeat the right of the purchaser, but a suspicion of a defect or knowledge of circumstances that might excite such suspicion in the mind of a cautious person, or even gross negligence at the time, is insufficient.   Hotchkiss v. Banks, 21 Wall. 354, 359, 22 L. Ed. 645; Murray v. Lardner, 2 Wall. 110, 17 L. Ed. 857.

With these principles in mind, I am unable to find any support for the reversal of the decree of the Circuit Court.   It is not asserted in the foregoing opinion that Richard M. Neely personally obligated himself in respect of existing incumbrances, nor that he was guilty of bad faith, nor, except by suggestion or inference, that he was aware or even had any suspicion that his mother had failed to lift or make satisfactory provision concerning the annuities during the months succeeding his sole connection with the transaction.   Nor is the result rested on a contention that he did not pay his mother full value for the note and mortgage.

It is said in the foregoing opinion that the deed, note, and mortgage "were prepared by Annie H. Neely, or by one of her agents." A cursory reading of the opinion would convey the inference that Richard M. Neely may have been the agent, or may have been present.   But the record shows, without dispute, that he was not present, did not prepare any of the instruments, and did not in any manner participate in the closing of the sale.   And it does not appear that he was aware of any default of his mother when the deed was delivered.   It is also said in the foregoing opinion that what amount, if any, he paid his mother for the note and mortgage, was "left in grave doubt by the evidence"; and while this is said to be immaterial, in the view of the case which is adopted, its tendency is to support an inference that, after all, a just result was attained by the opinion of the court.   I have already observed that it was overwhelmingly shown that the consideration was paid, and where it came from, and that counsel for Williams assisted in showing it. The greater portion of it came from the payment for another tract of land, which belonged to Richard M. Neely and a brother, and in which their mother had no interest whatever.   Again, the fact is referred to in the foregoing opinion that Richard M. Neely was one of the sureties upon the bond of his mother as executrix.   It is true that he was, but I am at a loss to perceive why that fact was referred to as even remotely justifying the conclusion which was

reached. The suit was not one directly or indirectly to reach Richard M. Neely's responsibility as a surety. Moreover, the maximum of his liability as a surety was limited by the bond to $1,000, and that is not the limit which the court in the foregoing opinion has placed upon his liability to respond for the breach of his mother's covenant against incumbrances. On the contrary, it is expressly said that the undischarged incumbrances are about equal to the amount of the note, which is now several times the penal sum of the bond of the executrix. The case of Williams is solely supported by a number of unrelated facts and circumstances which are consistent with his own mistake, negligence, or voluntary acquiescence when the sale was consummated, but which neither singly nor in combination show bad faith on the part of Richard M. Neely, or knowledge of the failure of consideration for the note and mortgage, or absence of consideration for his purchase of them.

For these reasons, I am of the opinion that the decree of the Circuit Court should be affirmed.